**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND**

| | |
|---|---|
| **CHARLES CHANG**<br>19212 Circle Gate Dr #201<br>Germantown, MD 20874 | : <br> : <br> : |
| **WON SONG**<br>545 Odenhal Avenue<br>Gaithersburg MD 20877 | : <br> : <br> : |
| **DONGXIONG ZHU**<br>7022 Winterbay Lane<br>Bethesda Maryland | : <br> : <br> : |
| ***On behalf of themselves and<br>all others similarly situated*** | : <br> : <br> : |
| Plaintiffs, | : <br> : |
| v. | :       CASE NO.: |
| **IRON AGE ROCKVILLE, LLC**<br>25407 PAINE ST.<br>DAMASCUS MD 20872 | : <br> : <br> : |
| SERVE RESIDENT AGENT:<br>MYUNG AE SIM<br>25407 Paine St.<br>Damascus MD 20872 | :       JURY TRIAL DEMANDED<br> : <br> : <br> : <br> : |
| **IRON AGE BALTIMORE, LLC**<br>6506 Baltimore National Pike<br>Catonsville MD 21228 | : <br> : <br> : |
| SERVE RESIDENT AGENT:<br>HANNAH SIM<br>25407 Paine St.<br>Damascus MD 20872 | : <br> : <br> : <br> : |
| **IRON AGE ANNANDALE, LLC**<br>7031 Little River Turnpike, Unit 3A,<br>Annandale, VA 22003 | : <br> : <br> : |
| SERVE RESIDENT AGENT: | : |

1

        KANG & THOMAS, LLC                    :
        11130 FAIRFAX BOULEVARD,              :
        SUITE 310                             :
        FAIRFAX, VA 22030                     :
                                              :
                                              :
**IRON AGE CENTREVILLE, LLC**                 :
6023 CENTREVILLE CREST LANE,                  :
CENTREVILLE, VA, 20121 – 0000                 :
                                              :
SERVE RESIDENT AGENT:                         :
                                              :
        KANG & THOMAS, LLC                    :
        11130 FAIRFAX BOULEVARD,              :
        SUITE 310                             :
        FAIRFAX, VA, 22030                    :

**MYUNG AE SIM**                              :
25407 Paine St.                               :
Damascus MD 20872                             :
                                              :
**HANNAH SIM**                                :
25407 Paine St.                               :
Damascus MD 20872                             :
                                              :
**KENNY KIM**                                 :
25407 Paine St.                               :
Damascus MD 20872                             :
                                              :
                                              :
        Defendants.                           :

## COLLECTIVE ACTION COMPLAINT UNDER THE FAIR LABOR STANDARDS ACT AND CLASS ACTION COMPLAINT

Plaintiffs Charles Chang, Dongxiong Zhu, and Won Song, by and through their undersigned counsel, and for themselves and all others similarly situated, state a collective action complaint against Iron Age Rockville, LLC, Iron Age Baltimore, LLC, Iron Age Annandale, LLC, and Iron Age Centreville, LLC, Myung Ae Sim, Hannah Sim, and Kenny Kim, pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.,* and alleging a putative class action involving supplemental

2

state law claims under the Maryland's Wage and Hour Law, Md. Code Ann., LE Art.§ 3-401 *et seq* ("MWHL"), and the Maryland Wage Payment and Collection Law, Md. Code Ann., LE Art. § LE 3-501 *et seq*. ("MWPCL"), demand a jury trial, and state as follows:

## INTRODUCTION

1. This is a collective action for unpaid wages, liquidated damages, and other relief provided by the FLSA, 29 U.S.C. § 201 et seq., and a putative class action alleging supplemental state law claims under the MWHL, Md. Code Ann., LE Art. § 3-401 et seq., and the MWPCL, Md. Code Ann., LE Art. § 3-501 et seq.

2. Plaintiffs seek on behalf of themselves and all those similarly situated, in addition to the actual sums owed, liquidated and statutory damages pursuant to the FLSA, MWHL, and MWPCL, and attorney's fees and costs as provided under the FLSA, MWHL, and the MWPCL.

## JURISDICTION AND VENUE

3. This Court has subject matter/original jurisdiction over this action pursuant to 29 U.S.C § 206, 29 U.S.C. § 207, and 28 U.S.C. § 1331.

4. This Court has supplemental jurisdiction over the MWHL and MWPCL claims pursuant to 28 U.S.C. § 1367(a) because said claims are so related to the FLSA claims that they form part of the same case or controversy.

5. Venue and personal jurisdiction are proper pursuant to 28 U.S.C. § 139l(b), because Defendants do business within this judicial district and the events and omissions giving rise to the claims in this Complaint occurred in this judicial district.

## PARTIES

6. Plaintiffs are restaurant servers employed by Defendants.

7. Plaintiffs are paid an hourly rate and receive tips left by customers.

8. Plaintiffs are entitled to overtime if they work more than forty hours in a week and are not covered by an exemption in either FLSA or the MWHL.

9. Defendants Iron Age Rockville, LLC and Iron Age Baltimore, LLC, are corporations formed in the State of Maryland to engage in the operation of a restaurant, bar, and related activities. Defendants Iron Age Centerville, LLC and Iron Age Annandale, LLC are corporations formed in the Commonwealth of Virginia to engage in the operation of a restaurant, bar, and related activities.    The Defendants mentioned in this paragraph are collectively referred to as "The Corporate Defendants."

10.  At all times material herein, Iron Age Rockville, LLC, had an annual gross volume of sales made or business done in an amount exceeding $500,000.00.

11. At all times material herein, Iron Age Baltimore, LLC, had an annual gross volume of sales made or business done in an amount exceeding $500,000.00.

12. At all times material herein, Iron Age Centerville, LLC, had an annual gross volume of sales made or business done in an amount exceeding $500,000.00.

13. At all times material herein, Iron Age Annandale, LLC, had an annual gross volume of sales made or business done in an amount exceeding $500,000.00.

14. At all times material herein, the corporate Defendants each employed at least two or more employees who are engaged in commerce, and who produce goods for commerce, or handle, sell, or otherwise work on goods or materials that have moved in or were produced for commerce as a single enterprise under the FLSA.

15. For instance, there are employees of the corporate Defendants who negotiate and purchase food from producers and suppliers who operate in interstate commerce.

16. There are employees who, like Plaintiffs, cook, serve, and otherwise handle this food,

as well as the beverages, that cross interstate and even international boundaries.

17. There are employees who regularly use wire and electronic means of communicating interstate, including Plaintiffs and other servers who also regularly sell food and beverages that has moved in interstate commerce, and who regularly process credit card transactions for customer payments.

18. There are employees who use, in Defendants' restaurants, cleaning products, dishes, tools, utensils, napkins, menus, signage, among other items, that have moved in interstate commerce.

19. Additionally, Defendants Myung Ae Sim, Hannah Sim, and Kenny Kim (collectively the "individual Defendants") operate multiple restaurants across state lines, with locations in Maryland, Virginia, Georgia, and Illinois, and internationally in Thailand.  The corporate Defendants share and use the trade name "Iron Age."

20. These restaurants regularly interact and conduct business with each other in interstate commerce. For example, the restaurants in Maryland, Virginia, and Georgia share a website that includes food descriptions applicable to all locations.

21. The Defendants use a group texting and social media application called "Band" to communicate with all of the servers.  The individual Defendants often post schedules and work rules on Band.  These communications cross states line via the internet.

22. The locations in Maryland and Virginia often share shipments of food, including meat, side dishes and ice.  Such products are often shipped from one location to another, including across state lines.  The Defendants use a catering truck to transport refrigerated and frozen items between the restaurants.

23. Servers often work for more than one of the locations during their employment tenures.

The individual Defendants often assign the servers to different locations in the same week depending on scheduling and labor needs.

24. The corporate Defendants operate as a single enterprise and joint employer and thus are jointly and individually liable for damages to the Plaintiffs arising under the FLSA, MWHL, and MWPCL.   These corporate Defendants are closely integrated, are owned and operated by the individual Defendants.  The corporate Defendants are deliberately designed to ostensibly shield liability of the individual Defendants as employers for employment law violations.

25. Accordingly, subject matter jurisdiction exists because Plaintiff, and others similarly situated, are employed by Defendants, which are covered entities, satisfying the enterprise coverage provisions under the FLSA.

26. The corporate Defendants also satisfy the coverage provisions of the MWHL.

27. The corporate Defendants have at all material times been an "employer" within the meaning of the FLSA, MWHL, and MWPCL.

28. The individual Defendants are the owners of the corporate Defendants, with complete operational control of corporate Defendants' restaurants.

29. The individual Defendants maintain joint custody and control of the corporate Defendants' business records and maintain those records, such as payroll records.

30. The individual Defendants are aware of operational issues throughout the restaurant, and are knowledgeable of the corporate Defendants' past and present employment practices and policies.

31. The individual Defendants possessed and continue to possess the authority and discretion to fix, adjust and determine hours worked and amounts paid with respect to employees at the corporate Defendants, including Plaintiffs, and possessed and continue to possess the ability

to hire and terminate employees.

32. The individual Defendants receive and continue to receive income from the corporate Defendants, and have been enriched by the failure of the Defendants to properly pay their workers. At all times material herein, the individual Defendants have been "employers" within the meaning of the FLSA, MWHL, and MWPCL. Myung Ae Sim, Hannah Sim, and Kenny Kim thus are jointly and individually liable for damages to Plaintiffs, and others similarly situated opt-in Plaintiffs, arising under the FLSA, MWHL, and MWPCL.

33. As set forth below, Plaintiffs seeks unpaid minimum wages and unpaid overtime wages, in amounts to be determined based on the evidence, as well as liquidated and statutory damages, pursuant to the FLSA, MWHL, and MWPCL, and attorneys' fees and costs as provided under the FLSA, MWHL, and MWCPL.

34. There exists more than one hundred (100) restaurant server employees of Defendants who are similarly situated to Plaintiffs, who have worked for Defendants in the last three years as restaurant servers, and who have not received minimum wages and/or overtime wages, including wages at the proper rate.

35. Plaintiffs and other similarly situated restaurant servers, who received tipped income, were not exempt under the MWHL's and FLSA's minimum wage and overtime requirements.

36. By failing to pay the statutory minimum wage that were due to Plaintiffs and other similarly situated server employees, Defendants willfully violated very clear and well-established minimum wage provisions of the FLSA and MWHL. Additionally, by failing to pay overtime to Plaintiffs and similarly situated hourly employees, Defendants willfully violated very clear and well-established overtime provisions under the FLSA and the MWHL. In addition to actual sums owed, Plaintiffs seek, on behalf of themselves and other employees similarly situated, liquidated

(statutory) damages pursuant to the FLSA, pre-judgment interest on all amounts owed under the MWHL, three times the minimum wages and overtime owed under the MWHL pursuant to the statutory damage provisions of the MWHL and MWPCL, and attorneys' fees and costs as provided under the FLSA, the MWHL and MWPCL.

## FACTUAL ALLEGATIONS

37. Charles Chang has worked for Defendants from December 2014 to the present as a server, though he occasionally took leave for travel or for medical reasons.

38. Mr. Chang, has for most of his tenure, worked at the Defendants' restaurant in Rockville. For one lengthy period, from roughly August 2018 to September 2019, the Defendants assigned him to work in the Centerville location.

39. Mr. Chang works four or five days in a week. A typical weekday dinner shift is seven to eight hours, from 4:00 p.m. to between midnight and 1:00 a.m. A typical weekend shift is 12 hours. Mr. Chang usually works two weekend shifts and either two day shifts or three day shifts. He often works more than forty hours in a week.

40. For example, attached as Exhibit A, is a typical paystub for Mr. Chang for the pay period November 25, 2019 to December 8, 2019. The pay stub shows that Mr. Chang worked 61.5 regular hours and 5.5 overtime hours.

41. Won Song has worked for Defendants since March 2017 to the present as a server. Mr. Song primarily works at Defendants' Rockville location, though he has also been assigned shifts at the Catonsville, Centreville, and Annandale locations.

42. Mr. Song works also four or five days in a week. A typical weekday dinner shift is seven to eight hours, from 4:00 p.m. to between midnight and 1:00 a.m. A typical weekend shift is 12 hours. Mr. Song also usually works two weekend shifts and either two or three week day

shifts.  He often works more than forty hours in a week.

43. For example, attached as Exhibit B, are typical paystubs for Mr. Song.  For the pay period August 19, 2019 to September 1, 2019, Mr. Song's pay stub shows that he worked 71.5 regular hours and 15.5 overtime hours.  For the pay period September 16, 2019 to September 29, 2019, Mr. Song's pay stub shows that he worked 80 regular hours and 8.25 overtime hours.  For the pay period September 30, 2019 to October 13, 2019, Mr. Song's pay stub shows that he worked 80 regular hours and 23.25 overtime hours.  For the pay period October 28, 2019 to November 10, 2019, Mr. Song's pay stub shows that he worked 80 regular hours and 9 overtime hours.

44. Plaintiff Dongxiong Zhu worked for the Defendants from March 2019 to February 2020.  Mr. Zhu only worked in the Defendants' Rockville location.   Mr. Zhu generally worked three weekday shifts and two weekend shifts.  On several occasions, specifically in December 2019, he worked double shifts (covering lunch and dinner) on weekends.  On those weeks he worked double shifts, he would work more than 40 hours in a week.

45. Attached as Exhibit C is a paystub for Zhu from December 2019.  Defendants did not enumerate the number of overtime hours Mr.  Zhu worked on the pay stub.

46. As noted, the Plaintiffs and those similarly situated often work more than forty hours in a week.

47. Defendants paid each of the Plaintiffs and those similarly situated in the same manner.

48.  Defendant paid Plaintiffs and those similarly situated in direct cash wages at an hourly rate that is below the Maryland state minimum wage and below the Federal minimum wage.

49. In addition, the Plaintiffs and those similarly situated are given tips by customers as a gift or gratuity in recognition of a service performed by the Plaintiffs those similarly situated.

50. The Plaintiffs and those similarly situated are permitted to keep all tips left by

customers except to the extent the Defendants required that those tips be part of an unlawful tip pooling arrangement (discussed further below) or to the extent Defendants unlawfully kept those tips to discipline Plaintiffs for alleged work rule infractions.

51. Defendants often paid Plaintiffs and those similarly situated direct cash wages in an hourly amount that is less than the applicable minimum wage.

52. For purposes of the FLSA, Defendants claim to take a tip credit to make up the difference between the direct cash wages and the applicable minimum wage.

53. When Plaintiffs and those similarly situated worked overtime, Defendants paid Plaintiffs and those similarly situated *1.5 times the rate they paid direct cash wages*.  This is shown on Exhibits A & B.

54. By so doing Defendants violated a long established and clear rule under the FLSA, which requires that the overtime be paid at *1.5 times the employee's regular rate of pay.*

55. Defendants have paid overtime to the Plaintiffs and those similarly situated *1.5 times their direct cash wages* and not *1.5 times their regular rate* for three or more years before the filing of this action.

56. Each week, Defendants require Plaintiffs and other similarly situated servers to give tips to employees who do not customarily and regularly receive tips.  Defendants track this tip pooling arrangement on a google spreadsheet.  A sample of that spreadsheet is attached as Exhibit D, and shows Mr. Chang as "Charles," Mr. Song as "Won," and Mr. Zhu as "Erik" participating in the Defendants' unlawful tip pooling arrangement.

57. Specifically, Defendants required that the Plaintiffs and other similarly situated servers give 7.5% of their tips to kitchen employees, which on exhibit D are indicated in the column labeled "station."

58. Under 29 U.S.C. § 203(m) and Md. Code Ann., Lab and Empl. § 3-419(a)(1), an employer may only require a server to pool tips with employees who customarily and regularly receive tips, such as waiters and busboys.

59. An employer loses the benefit of 29 U.S.C. § 203(m) and Md. Code Ann., Lab and Empl. § 3-419 if it requires tipped employees to share their tips with employees who do not customarily and regularly receive tips, such as kitchen workers, as Defendants require here.

60. Defendants have committed this violation of the FLSA and the MWHL for three or more years before the filing of this action.

61. Defendants also required servers, including Plaintiffs and those similarly situated, to pay the cost to the restaurant of any of their customers' walkouts.

62. Plaintiffs, at all times relevant, complied with Defendants' practice as described herein.

63. There is no statutory basis allowing for Defendants to deduct customer walkouts from the wage rate set prescribed in 29 U.S.C. § 203(m) and Md. Ann. Code LE Art. § 3-419.

64. Additionally, and in the alternative, by deducting monies from Plaintiffs and other servers, ostensibly to recoup for customer walkouts, Defendants have impermissibly retained tipped income under the FLSA and the MWHL.

65. Defendants deducted from the hourly wages of Plaintiffs and other server employees, an amount allegedly equal to four percent (4%) of the credit card tips.  This is shown on Exhibit D, specifically, in the column labeled "net credit tip," which shows the 4% reduction.

66. Credit card processing charges are a business expense which the Defendants deduct from their income tax returns.

67. The costs associated with processing a tip left by credit card are just like any other banking or other business expense of an employer, which cannot be charged to an employee and

thereby reduce an employee's wages below the statutory minimum wage.

68. There is no statutory basis allowing for Defendants to deduct any business expenses from the wage rate set prescribed in 29 U.S.C. § 203(m) and Md. Ann. Code LE Art. § 3-419.

69. Additionally, and in the alternative, these deductions from the hourly wages of Plaintiffs and other servers, ostensibly to recoup for credit card processing charges for tipped income, exceeded the expense actually incurred by Defendants in collecting and processing the tips, over a definable time period, and thus Defendants have received more than its total expenditures associated with credit card tip collections, and have therefore impermissibly retained tipped income under the FLSA/MWHL.

70. Defendants often dock the Plaintiffs' tips and the tips of those similarly situated to attempt to discipline these servers for perceived rules infractions.   If a server violates a rule, Defendants place them on "training" for a shift.  "Training" means the Defendants pay the servers an hourly cash wage.  Defendants keep all or some the server's tips in a segregated "company fund."

71. Defendant repeatedly and overtly maintain this practice of taking employee tips.

72. On August 10, 2017, Defendants announced to the servers, via the Band application, "If any server comes in with a hickey on his/her neck you will be sent home and a day of training."

73. On October 25, 2018, Defendants announced to the servers, via the Band application, "If I catch anyone using the big bowl [for salad], its training."

74. On February 10, 2019, Defendants announced to the servers, via the Band application, "If you arrive even a minute late you will be training for the day . . .'

75. On June 29, 2019, Defendants announced to the servers, via the Band application, "If you are showing up without [being properly dressed], the management will either send you home

or put [you] in training."

76. If Plaintiffs or those similarly situated are late for a shift, Defendants withhold all or a part of the Plaintiffs' tips for that shift.

77. If Defendants perceive that Plaintiffs or those similarly situated overserve a portion of food, Defendants withhold all or a part of the Plaintiffs' tips for that shift.

78. If Plaintiffs or those similarly situated neglect to clock out at the end of a shift, Defendants withhold all or a part of the Plaintiffs' tips for that shift.

79. Defendants also require that the Plaintiffs and those similarly situated pay for the costs of laundering or dry-cleaning uniforms.

80. Defendants have put Mr. Chang and Mr. Song "on training" and kept their tips for various alleged rule infractions.  For example, Defendants put Mr. Song and Mr. Zhu on training and kept their tips for arriving late for a shift.   Defendants put Mr. Chang and Mr. Zhu "on training" and kept their tips for allegedly serving food portions that was too large to paying customers.

81. There is no statutory basis allowing for Defendants to make such deductions from the wage rate set prescribed in 29 U.S.C. § 203(m) and Md. Ann. Code LE Art. § 3-419.

82. Additionally, and in the alternative, by deducting monies from Plaintiffs and other servers, ostensibly for discipline or other reasons, Defendants have impermissibly retained tipped income under the FLSA and the MWHL.  Specifically, Defendants have repeatedly violated 29 U.S.C. § 203(m)(2)(B), which prohibits employers, whether or not they take a tip credit, from keeping their employees' tips "for any purposes, including allowing managers or supervisors to keep any portion of employees' tips."

83. Defendants did not provide the Plaintiffs and those similarly situated with an

appropriate tip credit notice.

84. In any event, Defendants' practices eviscerate whatever information that Defendants relied upon to "inform" the Plaintiffs and other similarly situated employees as required by 29 U.S.C. § 203(m). These practices include: (a) requiring tips be shared with non-tipped workers (i.e., managers); and (b) requiring workers to pay for business losses, such as customer walkouts; (c) and taking tips to discipline servers for alleged rule infractions.

85. Defendants have violated the FLSA, the MWHL, and MWPCL insofar as they:

(a) Failed to properly record and pay at least the minimum wage for all hours worked;

(b) Maintained an invalid tip pool where a percentage of the tips of Plaintiffs and other similarly situated bartender employees were tipped out to non-tipped kitchen employees;

(c) Maintained a policy and practice of requiring Plaintiffs and other similarly situated server employees to pay for business losses, such as reimbursement for tabs caused by customer walk-outs, resulting in not just the loss of the legal ability of Defendants to take a tip credit, but also resulting in unlawful wage deductions as to Plaintiffs and other similarly situated server employees;

(d) Maintained a policy and practice of taking tips from Plaintiffs and other similarly situated servers' employees to discipline them for purported infractions of work rules;

(e) Maintained a policy and practice of deducting unreasonably high amounts to purport to recoup for credit card processing charges,

(f) Failed to properly pay working time over forty hours per week, at a rate no less than one and a half (1 1/2) times the regular minimum wage, to Plaintiffs and other similarly situated server employees; and

(g) Failed to inform Plaintiffs and other similarly situated server employees, of the tip credit provisions of 29 U.S.C. § 203(m) and Md. Ann. Code LE Art.§ 3-419, thereby requiring Defendants to have paid at least $7.25/hour for each of the hours worked by Plaintiffs and other similarly situated hourly tipped employees, as opposed to $3.63/hour, the lowest rate possible

under the FLSA.

86. Defendants have violated the rights of the Plaintiffs, and other similarly situated employees, to be paid the full minimum wage. While the FLSA allows employers to pay less than minimum wage to employees who receive tips, 29 U.S.C. § 203(m), the employer must still pay at least $2.13/hour under the FLSA and $3.63/hour under the MWHL, and must allow the tipped employees to retain all tips (except in a valid tip pooling arrangement).

87. Defendants were required by the FLSA and the MWHL (29 U.S.C. § 203(m) and Md. Ann Code LE art.§ 3-419 (respectively)), to inform tipped employees, like Plaintiffs and others similarly situated servers, that among other things, tipped employees were entitled to retain all of their tips except in a valid tip pooling arrangement, before they could potentially pay $3.63 an hour to the Plaintiffs (and others similarly situated), an hourly wage which is lower than the requirements of 29 U.S.C. § 206, and half of the minimum wage as set forth in Md. Ann. Code LE art.§ 3-413.

88. Defendants violated the 29 U.S.C. § 203(m) and Md. Ann. Code LE art. § 3-419 by failing to inform Plaintiffs, and others similarly situated employees, that it was taking a so-called "tip credit" against Defendants' minimum wage obligations, the amount of the tip credit, or that Plaintiffs (and other tipped workers) had the right to retain all tips except in a valid tip pooling arrangements, or any of the other requirements set out by law. See 29 C.F.R. § 531.59(b).

89. Defendants also failed to allow Plaintiff, and those similarly situated, to retain all of their tips insofar as they maintained an invalid tip pooling arrangement.

**CLASS ALLEGATIONS**

90. Plaintiffs seek to represent two distinct classes: (A) one FLSA Class (Counts I, II, and III); and (B) one Maryland class (Counts IV, V and VI) that cover the weeks that the Plaintiffs worked in Maryland.

91. The "FLSA Class" (Counts I, II, and III) consists of all tipped servers who performed any work at Defendants' restaurants at any time during the period beginning three (3) years from the date of commencement of this lawsuit through the date of class certification, and, with respect to Count II, who performed work in excess of forty (40) hours per week;

92. The "Maryland Class" (Counts IV, V and VI) consists of all tipped servers who performed any work at Defendants' restaurants in Maryland at any time during the period beginning three (3) years from the date of commencement of this lawsuit through the date of class certification, and with respected to count IV, who were paid by the hour and who performed work in excess of forty (40) hours per week;

93. Excluded from the FLSA Class or the Maryland Class are bona fide owners, officers and directors of Defendants, non-tipped employees and kitchen employees.

94. There are questions of fact and law common to all classes ("opt in" and Rule 23 opt out), including but not limited to:

- Whether Defendants violated 29 U.S.C. § 203(m) and Md. Ann. Code LE art. § 3-419 by failing to properly inform Plaintiff, and other similarly situated servers, of the so-called tip credit provisions of the FLSA and MWHL.

- Whether Defendants violated 29 U.S.C. § 203(m) and Md. Ann. Code LE art. § 3- 419 by maintaining a policy and practice of requiring Plaintiffs and other similarly situated server employees to pay for business losses, such as reimbursement for tabs caused by customer walk-outs.

- Whether Defendants failed to comply with the tip credit provisions of 29 U.S.C. § 203(m) and Md. Ann. Code LE Art. § 3-419, because Plaintiffs and other similarly situated servers were subjected to

deductions from their tips ostensibly to recoup for credit card processing charges, when neither the statutory text of the FLSA and MWHL provide for any such deductions.

- Whether Defendants failed to comply with the tip credit provisions of 29 U.S.C. § 203(m) and Md. Ann. Code LE Art. § 3-419, because Plaintiffs and other similarly situated servers were subjected to deductions from their tips for alleged rules infractions.

- Alternatively, whether Defendants failed to comply with the tip credit provisions of 29 U.S.C. § 203(m) and Md. Ann. Code LE Art. § 3-419, because Plaintiffs and other similarly situated servers were subjected to unreasonably high deductions from their tips ostensibly to recoup for credit card processing charges, which exceeded the expense actually incurred by Defendants in collecting the tips, over a definable time period.

- Whether there is a genuine bona fide dispute as to the deductions and unpaid wages claimed by the proposed Maryland Minimum Wage and Maryland Overtime Wage Class Members, thus rendering Defendants liable to Plaintiffs and all similarly situated servers for statutory damages under the MWPCL, Md. Ann Code LE art. § 3-501 et seq., and if there is a lack of a bona fide dispute, whether Plaintiffs are entitled to receive statutory enhancements in addition to the recovery of unpaid

95. The claims of Plaintiffs are typical of the class they seek to represent. Moreover, the questions of fact and law common to Class Members predominate over any questions affecting only individual members, as all Class members are current or former servers who were not properly paid the minimum wage and overtime. Individual issues will relate solely to the quantum of relief due to the individual Class Members.

96. Upon information and belief, Plaintiffs believe that the potential Class Members number at least one hundred (100) persons. The proposed classes are easily ascertainable as the number and identities of the Class Members are readily determinable from employee and payroll records that the Defendants maintain.

97. Plaintiffs will fairly and adequately protect the interests of the class. The interests of the named Plaintiffs are consistent with, and not antagonistic to, those of the class.

98. The named Plaintiffs are represented by competent counsel who is experienced in complex FLSA litigation. The lawyer who represents the named Plaintiffs in this case is licensed to practice in the District of Maryland, and has more than ten (10) years of practice before the U.S. District Court for the District of Maryland.

99. A hybrid class/collective action is superior to other available methods for the fair and efficient adjudication of this controversy and is consistent with the legislative history of the FLSA.

100. Class action treatment will permit a large number of similarly situated persons to receive notice and prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that number individual actions engender.

101. Maintenance of this action as a hybrid class/collective action would promote the equitable administration of justice because pursuing claims on an individual basis would be disproportionately expensive.

102. The prosecution of separate claims by individual Class Members would create a risk of inconsistent or varying adjudications with respect to the individual members of that class that would establish incompatible standards of conduct for Defendants.

**Causes of Action**
**COUNT I**
**(FLSA- Failure to Pay Minimum Wage)**

103. Plaintiffs incorporate the foregoing paragraphs as set forth above, and state that Defendants' actions complained of herein constitute a willful violation of 29 U.S.C. § 206 (minimum wage), because Defendants have at all material times failed to pay Plaintiffs, and other

similarly situated employees, the proper minimum wage rate, free and clear of deductions and in a timely manner, by: (a) refusing and failing to inform Plaintiffs and others similarly situated employees about all of the information related to Defendants' claim of a tip credit legally required to be provided by Defendants; (b) requiring Plaintiffs and other similarly situated employees to participate in an invalid tip pool; (c) requiring Plaintiffs and other similarly situated employees pay the cost of business losses occurring as a result of customer walkouts while Defendants nonetheless claimed a tip credit; and (d) requiring that Plaintiffs and others similarly situated pay unreasonably high amounts for credit card processing fees;  (e) otherwise failing to comply with the requirements of 29 U.S.C. § 203(m) and 29 U.S.C. § 206.

104. As a result, Plaintiffs and other similarly situated hourly tipped employees who opt into this lawsuit, have the legal right to receive the full minimum wage, as required by Federal law and applicable Federal regulations.

### COUNT II
### (FLSA- Failure to Properly Pay Overtime)

105. Plaintiffs incorporate the foregoing paragraphs, as set forth above, and states, in addition, that Defendants' actions complained of herein constitute a violation of Section 207 of the FLSA, because Defendants willfully failed to pay Plaintiffs and other similarly situated server employees overtime compensation for all times that they worked in excess of forty ( 40) hours per week, and willfully failed to pay overtime compensation at a wage rate of at least one and a half (1 1/2*)* times the applicable minimum wage rate that Plaintiffs and others similarly situated were entitled to receive as their regular rate of pay with Defendants.

106. As a result of Defendants' actions complained of herein, Defendants willfully violated Section 207(a)(l) of the FLSA, because Defendants failed to compensate Plaintiffs and other similarly situated bartender and barback employees at a proper overtime rate after application of

the so-called tip credit, for hours that Plaintiffs and other similarly situated employees worked in excess of forty hours in a work week at a rate of not less than one and a half (1 1/2) times the applicable minimum wage as required by Federal law and Federal regulations and that Plaintiffs and others similarly situated were entitled to receive as their regular rate of pay with Defendants.

107. As a result of Defendants' actions complained of herein, Plaintiffs and other similarly situated employees have failed to receive the overtime pay due to them, as required by Section 207 of the FLSA, 29 U.S.C. § 207.

**COUNT III**
**(FLSA – Unlawfully Retained Tips)**

108. Plaintiffs incorporate the foregoing paragraphs as set forth above, and state that Defendants' actions complained of herein constitute a willful violation of 29 U.S.C. § 203 (m)(2)(B), because Defendants have at all material times unlawfully retained tips from Plaintiffs, and other similarly situated employees by docking employee tips for alleged rules violations.  If Plaintiffs, and those similarly situated, violated a rule, Defendants place them on "training" for a shift.  "Training" means the Defendants pay the servers an hourly cash wage.  Defendants kept the server's tips in a segregated "company fund."

109. Under 29 U.S.C. § 203(m)(2)(B), employers cannot retain employees' tips "for any purposes, including allowing managers or supervisors to keep any portion of employees' tips."

110. Under 29 U.S.C. §216(b), any employer who violates Section 203(m)(2)(B) shall be liable to the employee or employees affected in the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer, and in an additional equal amount as liquidated damages.

**COUNT IV**

**(MWHL - Failure to Pay Minimum Wage)**

111. Plaintiffs incorporate the foregoing paragraphs as set forth above, and states that Defendants' actions complained of herein constitute a violation of Md. Ann. Code LE Art.§ 3-413 (minimum wage), because Defendants have, at all material times, failed to pay Plaintiffs the proper minimum wage rate for all hours worked, free and clear and in a timely manner, and otherwise failed to comply with the requirements of Md. Ann. Code LE Art.§ 3-419.

112. As a result, Plaintiffs and those similarly situated have the legal right to receive the full minimum wage, as required by Maryland law and applicable Maryland regulations.

**COUNT V**
**(MWHL - Failure to Properly Pay Overtime)**

113. Plaintiffs incorporate the foregoing paragraphs as set forth above, and states that Defendants' actions complained of herein constitute a violation of Md. Ann. Code LE Art.§ 3-420 (overtime) because Defendants have, at all material times, failed and otherwise refused to compensate Plaintiffs for all hours worked in excess of forty hours a work week at a rate of not less than one and a half (1½) times their regular rate of pay, as computed under Md. Ann. Code LE Art. § 3- 420.

114. Defendants' actions complained of herein constitute a violation of Section 3-415 of the MWHL, because Defendants failed to compensate Plaintiffs at a proper overtime rate after application of the so-called tip credit, for hours worked in excess of forty hours in a work week at a rate of not less than one and a half (1½) times the regular and applicable minimum wage as required by Maryland law. As a result, Defendants owe Plaintiffs and those similarly situated overtime wages in the amount of one and a half (1½) times the then-applicable minimum wage established by Md. Ann. Code LE Art. § 3-413 (minimum wage), for all work weeks they worked in excess of forty hours per week.

## COUNT VI
## (MWPCL Act- Unpaid Wages)

115. Plaintiffs incorporate the foregoing paragraphs as set forth above, and states that the actions of Defendants, in failing to inform the Plaintiffs of the provisions of Md. Ann. Code LE art.§ 3-419; alternatively, in refusing to allow Plaintiffs to retain his tipped wages free and clear; alternatively, in failing to pay overtime wages when earned, including payment in proper amounts, are all separate violations of the MWPCL, Md. LE Art.§ 3-502(a)(ii) and§ 3-505(a).

116. That the MWHL further compels each covered employer and non-exempt employee to make, as part of any working agreement, a promise to pay minimum wages and overtime wages as applicable under the MWHL.

117. That impliedly, by operation of law, Plaintiffs were entitled to be paid statutory minimum wages and overtime wages by Defendants which have gone unpaid.

118. That there are no bona fide disputes between the parties as to the right of the Plaintiffs to receive minimum wages or overtime wages. That there are no bona fide disputes between the parties as to the right of the Plaintiffs to retain his tips and to be paid all lawful wages for all hours worked, arising from her employment with Defendants. Defendants knew, or should have known, that it is a covered entity under the MWHL, and that Plaintiffs performed work as employees for which she was not properly compensated.

119. Plaintiffs and those similarly situated are entitled under MWPCL, Md. LE Art. *§ 3-507.2* to an award of treble damages and attorneys' fees with respect to the wages, i.e. the MWHL-mandated minimum wages and overtime wages, that have gone unpaid.

## Prayer

22

Based on the foregoing allegations, Plaintiffs respectfully request that this Court grant money damages in an amount to be determined by the evidence, exclusive of attorney's fees and costs; and in support thereof, requests this Honorable Court to issue the following Orders:

(a) Certify this action as a collective action pursuant to 29 U.S.C. § 216(b), and (i) compel Defendants to provide all material contact information, including email addresses and phone numbers, for potential opt-in Plaintiffs who performed work as servers receiving less than the full minimum wage ($7.25/hour); (ii) issue appropriate Notices as requested in Plaintiff's Motion for Conditional Certification; (iii) supervise the maintenance of this FLSA collective action; and (iv) supervise and enter appropriate orders allowing this matter to be tried as an FLSA collective action.

(b) Certify the claims under the MWHL and the MWCPL as set forth in Counts IV, V and VI as class actions (Maryland Classes) pursuant to Rule 23 of the Federal Rules of Civil Procedure;

(c) Order Defendants to pay Plaintiffs (and all similarly situated employees of Defendants  who file an opt-in notice in this litigation and proposed Maryland Class Members who fail to opt-out of this litigation), all unpaid overtime wage payments determined by the Court to be due and owing, under the FLSA, MWHL, and MWPCL, as well as well as a sum of liquidated damages in an amount equal to the amount of any unpaid overtime wage payments awarded to Plaintiffs (and all similarly situated employees of Defendants who file an opt-in notice in this litigation and proposed Maryland Class Members who fail to opt-out of this litigation), pursuant to the FLSA and MWHL

(d) Order Defendants to pay Plaintiffs (and all similarly situated employees of Defendants  who file an opt-in notice in this litigation and proposed Maryland Class Members who fail to opt-out of this litigation), the amount of the sum of any tip credit taken by Defendants as well as the tips unlawfully kept by the employer, and in an additional equal amount as liquidated damages, pursuant 29 U.S.C. §203(m)(2)(B) and 216(b).

(e) Order Defendants to pay the Plaintiffs and the proposed Maryland Class Members all MWHL mandated overtime and minimum wage payments determined by the Court to be due and owing to Plaintiffs and the proposed Class Members under the MWHL as well as treble damages under the MWPCL;

(f) Award Plaintiffs and the proposed Class Members their attorneys' fees and costs in pursuing this action;

(g) Award Plaintiffs (and all similarly situated employees of Defendants who file an opt-in notice in this litigation), interest on any sums determined due and owing from

Defendants, including pre-judgment interest on attorneys' fees and costs in pursuing this action;

(h) Grant Plaintiffs (and all similarly situated employees of Defendants who file an opt-in notice in this litigation), any additional relief that the Court deems appropriate and just.

Respectfully submitted,


_____/s/_____
James E. Rubin
Fed. Bar. No. 15605
The Rubin Employment Law Firm, P.C.
600 Jefferson Plaza, Suite 204
Rockville, Maryland 20852
T:  301-760-7914
jrubin@rubinemploymentlaw.com
*Counsel for Plaintiffs*


## JURY DEMAND

Plaintiffs demand a jury trial on all of the matter raised in the complaint.

_____/s/_____
James E. Rubin