**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **CHARLES CHANG,** *et al.* | * | |
| *On behalf of themselves and* | * | |
| *All others similarly situated* | | |
| | * | |
| **Plaintiffs,** | | |
| | * | |
| **v.** | | **Civil Case: 20-cv-0597 (PWG)** |
| | * | |
| **IRON AGE ROCKVILLE, LLC,** *et al.* | | |
| | * | |
| **Defendants** | | |
| | * | |

**JOINT MOTION FOR ORDER PRELIMINARILY APPROVING**
**SETTLEMENT AGREEMENT ESTABLISHING A**
**SETTLEMENT CLASS PURSUANT TO FED.R.CIV. 23(e)**
**AND 29 U.S.C. SECTION 216(b).**

Plaintiffs, Charles Chang, Won Song, and, Dongxiong Zhu, on behalf of themselves and others similarly situated, and Defendants, Iron Age Rockville, LLC, Iron Age Baltimore, LLC, Iron Age Annandale, LLC, Iron Age Centreville, LLC, Myung Ae Sim, and Hannah Sim, by and through their respective, undersigned counsel, jointly move this Court for an Order preliminarily approving a Fed. R. Civ. P. 23 Settlement Class under the Maryland Wage and Hour Law, Md. Code Labor and Employment Article Section 3-401 et seq and the Maryland Wage Payment and Collection Law and a Settlement Opt-in Class pursuant to the Fair Labor Standards Act, 29 U.S.C. Section 216(b):

## I.   BACKGROUND

On March 4, 2020, three Plaintiffs, (hereafter "The Class Representatives") filed a hybrid action: (1) a collective action arising under the Federal Fair Labor Standards Act ("FLSA"), 29

U.S.C. Section 201, *et seq.* and (2) a Rule 23 class action claim arising under the Maryland Wage and Hour Law, Md. Ann LE Art. Section 3-401, *et seq.*, and the Maryland Wage Payment and Collection Law, Md. Ann LE Art. Section 3-501, *et seq*. Since that time, four additional Plaintiffs, Ashley Chang, Justin Hsieh, Ryan Cho and Maxwell Burke, have opted in to this lawsuit (hereafter "The Opt-In Plaintiffs").

The Plaintiffs sued seven Defendants, three individuals and four limited liability companies. Two of the individual Defendants, Myung Sim and Hannah Sim, own, operate or manage one or more of the four corporate defendants.[1]  Each corporate defendant in turn operates one "Iron Age" restaurant.   Two restaurants are in located in Maryland (Rockville and Baltimore).  Two are in Virginia (Annandale and Centreville).

All of the Plaintiffs are servers who worked at one more of the Defendants' restaurants.

The Complaint alleges several theories of liability.  First, Plaintiffs allege Defendants could not claim a tip credit from the minimum wage because they required the plaintiff-servers to share tips with restaurant employees who do not "customarily and regularly receive tips."  29 U.S.C. §203(m).  The complaint alleges Defendants required that the Plaintiffs give 7.5% of their tips each shift to kitchen employees.

Second, the complaint alleges Plaintiffs were not properly informed of the "tip credit" provisions under Federal and Maryland law. A federal regulation, 29 C.F.R. § 531.59(b), states that "an employer is not eligible to take the tip credit unless it has informed its tipped employees in advance of the employer's use of the tip credit of the provisions of section 3(m) of the Act."

---

[1]     Plaintiffs were unable to locate or serve the third individual Defendant, Kenny Kim.

Third, the Complaint alleges a violation of 29 U.S.C. §203(m)(2)(B), in that the Plaintiffs were not allowed to retain all of their tips as Defendants implemented a policy of taking the servers' tips for perceived rules infractions.  See id. ("An employer may not keep tips received by its employees for any purposes.)"

Fourth, the Complaint alleges restaurant servers were subject to a deduction from their wages to cover the cost of processing credit card tips. Defendants withheld four percent (4%) of credit card tips to ostensibly cover the costs of credit card processing charges.  See Steele v. Leasing Enters., Ltd., 826 F.3d 237, 246 & 246 n.12 (5th Cir. 2016) (holding that a restaurant that deducted a 3.25% credit card processing charge from all servers' tips, which was less than 1% higher than the actual credit card fees charged violated the FLSA's tip credit provision).

Any of the above theories of liability, if proven, would result in Defendants losing the ability to take a tip credit and require them instead to pay the full minimum wage.  If the Defendants lose the ability to take the tip credit, any overtime would need to be recalculated based on the then applicable minimum wage. In response, the Defendants deny the allegations made against them.

On September 24, 2020, after exchanging informal discovery, including wage and hour records, the parties and their attorneys attended an all-day mediation before the Honorable William Connelly (Retired).  The parties reached a settlement in principle.  The parties, with the desire to resolve this collective and putative class action, submit this Motion as part of their request that the Court preliminarily certify a Settlement Class pursuant to Fed.R.Civ. 23(e) and a Settlement Class Pursuant to 29 U.S.C. Section 216(b) as follows:

> **Proposed Rule 23(e) Maryland Wage Settlement Class**: Any current or former server who performed work at an Iron Age restaurant in Maryland between March 4, 2017 and March 4, 2020

and who received hourly wages less than the then applicable Maryland State minimum wage.

**Proposed 29 U.S.C. 216(b) Fair Labor Standard Act Settlement Class**: Any current or former server who performed work at an Iron Age restaurant between October 16, 2017 and March 4, 2020, and who received hourly wages less than the Federal minimum wage.

## II.    STANDARDS OF REVIEW

### A.  Preliminary Approval and Certification of Rule 23 Settlement Class

Federal Rule of Civil Procedure 23(e) requires judicial approval of any proposed class action settlement. "If not a ground for certification per se, certainly settlement should be a factor, and an important factor, to be considered when determining certification." In re A.H. Robins Co., Inc., 880 F.2d 709, 740 (4th Cir. 1989), abrogated by Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997). The Supreme Court has affirmed that "[s]ettlement is relevant to a class certification." Amchem Products, 521 U.S. at 619. However, certification of a class for purposes of settlement must satisfy the pertinent Rule 23 requirements. Id. "[W]hen a district court is presented with a class settlement agreement, the court must first determine that 'the requirements for class certification under Rule 23(a) and (b) are met, and must separately 'determine that the settlement is fair to the class under [Rule] 23(e).'" In re NFL Players' Concussion Injury Litig., 775 F.3d 570, 581 (3'd Cir. 2014) (quoting Sullivan v. DB Invs., Inc., 667 F.3d 273, 319 (3'd Cir. 2011) (en banc)) (alteration in original).

"The exact process a district court should follow when presented with a 'settlement class' is not prescribed by Rule 23." In re NFL Players' Concussion Injury Litig., 775 F.3d at 581. "A settlement class 'offers defendants the opportunity to engage in settlement negotiations without conceding any of the arguments they may have against class certification.'" Id. (quoting, In re Cmty. Bank of N. Va., 418 F.3d 277, 299 (3'a Cir. 2005). "A district court's management of a

4

settlement class is different from a litigation class in that the court is acting as fiduciary 'to protect

unnamed members of the class.'" Id. (quoting, Ehrheart v. Verizon Wireless, 609 F.3d 590, 593

(3rd Cir. 2010)); In re Jiffy Lube Sec. Litig., 927 F.2d 155, 158 (4th Cir. 1991) ("The primary

concern addressed by Rule 23(e) is the protection of class members whose rights may not have

been given adequate consideration during the settlement negotiations."). "These differences aside,

'the 'settlement only' class has become a stock device.'" Id. (quoting Amchem, 521 U.S. at 618).

In re NFL Players' Concussion Injury Litig., 775 F.3d at 581, describes the preliminary

process for approving a settlement class as follows:

> Section 21.632 of the Federal Judicial Center's Manual for Complex
> Litigation (Fourth) explains that the "[r]eview of a proposed class
> action settlement generally involves two hearings."[FN16] Manual
> for Complex Litigation § 21.632 (4th ed. 2004) (hereinafter "Manual
> for Complex Litigation"). In the first hearing, or "preliminary
> fairness review," "counsel submit the proposed terms of settlement
> and the judge makes a preliminary fairness evaluation." Id. In the
> context of a "preliminary fairness review" of an uncertified
> settlement class, § 21.632 provides that "the certification hearing
> and preliminary fairness evaluation can usually be combined." Id.
> When combining a certification and preliminary fairness hearing:
>
> > "The judge should make a *preliminary determination* that the
> > proposed class satisfies the criteria set out in Rule 23(a) and
> > at least one of the subsections of Rule 23(b). See section
> > 21.22. If there is a need for subclasses, the judge must define
> > them and appoint counsel to represent them. The judge must
> > make a preliminary determination on the fairness,
> > reasonableness, and adequacy of the settlement terms and
> > must direct the preparation of notice of the certification,
> > proposed settlement, and date of the final fairness hearing."
> > Id. (emphasis added).
>
> This case management technique for uncertified settlement classes
> makes sense, particularly from a notice perspective. Rule 23(e)(l)
> requires the district court to "direct notice in a reasonable manner to
> all class members who would be bound by the proposal."
> Fed.R.Civ.P. 23(e)(l). The principal purpose of this provision is "to
> ensure that absentee class members, for whom a settlement will have

preclusive effect, have an opportunity to review the materials relevant to the proposed settlement and to be heard or otherwise take steps to protect their rights before the court approves or rejects the settlement." 2 McLaughlin on Class Actions§ 6.17 (10th ed. 2013). This notice can be sent to putative class members before the district court issues a certification order or, "[i]n cases in which a litigation class has already been certified ... the notice of settlement may also be sent to ... opt-outs to give them an opportunity to rejoin the class." *Id*.

The *preliminary* analysis of a proposed class is therefore a tool for settlement used by the parties to fairly and efficiently resolve litigation. In the context of a Rule 23(b)(3) opt-out class, this affords defendants the opportunity to determine whether there will be sufficient participation in the class before certifying the class and dispersing any settlement fund. This also allows the parties to forgo a trial on the merits, which often leaves more money for the resolution of claims.

In re NFL Players' Concussion Injury Litig., 775 F.3d at 581 (citation and footnote omitted).

As this Court stated in Decohen v. Abbassi, LLC, 299 F.R.D. 469, 479 (D. Md. April 17, 2014): "To determine if the proposed terms are fair, the court should consider: (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of class action litigation.'" Id. (citation omitted).

To determine if the settlement is adequate, the Court should consider: (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement. See Decohen, 299 F.R.D. at 479.

As stated in Decohen, there is a" 'strong presumption in favor of finding a settlement is fair.'" Decohen, 299 F.R.D at 479 (quoting Lomascolo v. Parsons Brinckerhoff, Inc., 2009 WL

3094955, at *10 (E.D. Va. Sept. 28, 2009). "Because a settlement hearing is not a trial, the [C]ourt's role is more 'balancing of likelihoods rather than actual determination of the facts and law in passing upon ... the proposed settlement.'" Id. (quoting Lomascolo, 2009 WL 3094955 at *l0.

B. *Preliminary Approval of 29 U.S.C. 216(b)) Fair Labor Standard Act Settlement Class.*

Generally speaking, "[u]nder the FLSA, 'there is a judicial prohibition against the unsupervised waiver or settlement of claims.'" Kianpour v. Restaurant Zon, Inc., et al., DKC 11-0802, 2011 WL 5375082, *2 (D. Md. Nov. 4, 2011) (quoting Taylor v. Progress Energy, Inc., 493 F.3d 454, 460 (4th Cir. 2007)). "Nevertheless, '[c]laims for FLSA violations can ... be settled when the settlement is supervised by the [Department of Labor] or a court.'" Id. (quoting Taylor, 415 F.3d at 374 (alterations in original); see also Gionfriddo et al. v. Jason Zink, LLC, et al., RDB 09-1733, 2011 WL 2791136, *2 (D. Md. July 15, 2011) ("Settlement agreements that resolve claims pursuant to the FLSA must receive court approval."). In general, Courts review FLSA settlements to ensure a fair and reasonable resolution of a bona fide dispute. Duprey v. Scotts Co. LLC, No. PWG-13-3496, 2014 WL 2174751, at *2 (D. Md. May 23, 2014).

Although the Fourth Circuit has not directly addressed the factors to be considered in approving FLSA settlements, "district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit" in Lynn's Food Stores v. United States, 679 F.2d 1350, 1354 (11th Cir. 1982). Saman v. LBDP, Inc., No. DKC–12–1083, 2013 WL 2949047, at *3 (D. Md. June 13, 2013) (citing Hoffman v. First Student, Inc., No. WDQ–06–1882, 2010 WL 1176641, at *2 (D. Md. Mar. 23, 2010); Lopez v. NTI, LLC, 748 F.Supp.2d 471, 478 (D. Md. 2010)); Simpson v. Pure Technologies U.S., Inc., 2018 WL 1851467 at * 2 (D. Md. Apr. 18, 2018). The settlement must 'reflect[ ] a fair and reasonable resolution of a bona fide dispute over FLSA provisions,' which includes a finding with regard to (1) whether there are FLSA issues actually in dispute, (2)

7

the fairness and reasonableness of the settlement in light of the relevant factors from Rule 23, and (3) the reasonableness of the attorneys' fees, if included in the agreement." Duprey, 2014 WL 2174751 at *2 (citing Saman, 2013 WL 2949047 at *3). See also Lomascolo v. Parsons Brinckerhoff, Inc., No. 08–1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009); Lane v. Ko–Me, LLC, No. DKC–10–2261, 2011 WL 3880427, at *2–3 (D. Md. Aug. 31, 2011)). "These factors are most likely to be satisfied where there is an 'assurance of an adversarial context' and the employee is 'represented by an attorney who can protect [his] rights under the statute.'" Duprey at *2 (citing Lynn's Food Stores, 679 F.2d at 1354).

### III.   PRELIMINARY RULE 23 ANALYSIS

"A class action will be certified only if meets the four prerequisites identified in Rule 23(a) and also fits within one of the three subdivisions of Rule 23(b)." Singleton et al. v. Domino's Pizza, LLC, 976 F.Supp.2d 665, 674 (D. Md. 2013).

#### A.   Rule 23(a) Requirements

1. Numerosity: Although there is no specific rule on how many members a class must have, the Fourth Circuit has indicated that a class with over thirty members satisfies the numerosity requirement. Williams v. Henderson, 129 Fed. Appx. 806, 811 (4th Cir. 2005). The servers that make up the proposed class in this case total over 300. Accordingly, this requirement is satisfied.

2. Commonality: Commonality is satisfied if only one legal or factual issue is shared by all class members. Fisher v. Virginia Elec. & Power Co., 217 F.R.D. 201, 212 (E.D. Va. 2003). This requirement is met where a defendant engaged in a common course of conduct. Id. In this case, there are common allegations that relate to the manner in which the Defendants took a tip credit, failed to pay the proper rate for overtime, failed to give proper notice of the tip credit, and took

8

deductions from tips, including by requiring that tips be shared with employee working in the back of the house, taking 4% of tips to pay for credit card  processing, and reducing tips for alleged rule violations.

The legal and factual issues concerning the claims raised in this case are common to all servers who are members of the Proposed Rule 23(e) Maryland Wage settlement class, with the amount of damages being the only difference.

3. Typicality: To show typicality, the representative plaintiffs "must suffer the same injury as the class members." Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 156 (1982). For typicality to be satisfied, the representative party's interest in prosecuting his/her own case must simultaneously tend to advance the interests of the absent class members. Deiter v. Microsoft Com., 436 F.3d 461, 466 (4th Cir. 2006). In this case, the claims of the Class Representatives are the same as the claims of each of the proposed classes. For example, the Class Representatives allege that they were subject to deductions from their tips for kitchen workers and the 4% deduction for credit card tips. Complaint paras. 54 and 65.  Thus, a sufficient relationship exists between the injury to the Class Representatives and the proposed class. Singleton, 976 F.Supp.2d at 676.

4. Adequacy: Rule 23(a)(4) requires that the "named [Plaintiff] will fairly and adequately protect the interests of the class." Simpson v. Specialty Retail Concepts, Inc., 149 F.R.D. 94, 102 (M.D.N.C. 1993). This requirement is met if it appears that (1) the Class Representatives have interests in common with, and not antagonistic to, the proposed class's interest; and (2) the Class Representatives' attorneys are qualified, experienced and generally able to conduct the litigation. Id.; Decohen, 299 .F.R.D. at 477; Singleton, 976 F.Supp.2d at 676. In this case, the Class Representatives and the putative Class satisfy both prongs of the "adequacy" test. Though the parties reached a settlement early in the litigation, the Class Representatives and Class Counsel

9

have vigorously prosecuted the case on behalf of the class. The Class Representatives' interests are aligned with those of the class members and the Class Representatives share an interest with class members in establishing that Defendants' policies during the relevant periods violated the MWHL and MPWCL. Finally, and as discussed in greater detail in Section III.C, *infra*, Class Counsel are qualified, experienced and competent, as demonstrated through the course of this litigation and other unpaid wage litigation. Decohen, 299 F.R.D. at 477 ("class counsel have shown by their vigorous prosecution of this litigation for three and a half years that they are qualified, experienced, and able to conduct the litigation."). Accordingly, the Rule 23(a) perquisites have been met.

B.      *Rule 23(b)(3) Requirements*

For purposes of this Motion, the parties rely on Rule 23(b)(3), which requires that the Court must find that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." "Certification under Rule 23(b)(3) is appropriate when 'settling the parties' differences in a single proceeding serves their interests by achieving 'economies of time, effort and expense' and promoting uniformity of decisions as to similarly situated class members without sacrificing fairness." Decohen, 299 F.R.D. at 477 (citations omitted).

1. Common Questions of Fact Predominate: "The predominance inquiry focuses on whether liability issues are subject to class-wide proof or require individualized and fact-intensive determinations." Singleton, 976 F.Supp.2d at 677. "Inasmuch as the predominance test focuses on the nature of the claims asserted, common questions predominate regardless of any difference in the amount of damages recoverable by individual class members." Temporary Services, Inc. v.

AIG, Inc., 2012 WL 2370523, *4 (D.S.C. June 22, 2012). In this case, the claims of the Class Representatives and the members of the proposed class arise from the allegations that the Defendants violated the tip credit rules and therefore are not entitled to take such credit. The Complaint alleges no conduct or claims particular to the Class Representatives that were not practiced upon every member of the proposed class. Accordingly, the issues of fact arising from Defendants' conduct predominate over any individual issues, making class treatment appropriate here. See Temporary Services, Inc., supra.

2. Common Questions of Law Predominate: In this case, the Class Representatives and the members of the proposed class all share common questions of law, insofar as the case involves the application of the MWHL and MWPCL. There are no variations in either law, with respect to their claims, that may defeat predominance.

3. A Class Action Is Superior To Other Available Methods To Adjudicate This Action: In this case, a class action settlement is superior because if a considerable number of servers pressed individual successive claims against the Defendants, it would be cost prohibitive and could threaten over time the ability of the Defendants to not only defend themselves but to pay settlements or judgments that may be entered in favor of the individuals. Thus, a class action has the benefit of allowing Defendants to generally address the claims of all interested persons.

Moreover, a class action has the benefit of providing court-sanctioned notice to interested individuals and providing them with the information necessary to make an informed decision concerning litigation against the Defendants. Accordingly, certifying this case as a class action for settlement purposes is a superior method to notify individuals who may have similar claims, and adjudicate, resolve, and settle those claims against the Defendants.

*C.  Appointment of Class Counsel*

The Class Representatives, on behalf of the putative Classes, seeks the appointment of Howard B. Hoffman, Esq. and Jordan Liew of Hoffman Employment Law, LLC, and James E. Rubin, Esq. of The Rubin Employment Law Firm, P.C., as class counsel. In determining whether to appoint Class Counsel, the Court must consider (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g).

The evidence in this case demonstrates that Class Counsel would satisfy their duty to fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(4). In particular, Class Counsel have interviewed witnesses and otherwise familiarized themselves with the Defendants' operations and potential defenses through discovery. Moreover, Class Counsel possess more than 40 years of combined years of experience with class actions, complex litigation, and actions arising under employment laws. Class Counsel practice extensively in Federal Court, and the litigation and negotiations in this has left Class Counsel well versed in the substantive statutory and common law that gives rise to this case. Finally, Class Counsels' law firm and practices are well-established and possess the resources to prosecute a large class action. However, because this Motion is for the purposes of certifying a settlement class, the level of resources that counsel will commit to represent the class "is less applicable than it otherwise would be." Temporary Services, Inc., 2012 WL2370523 at *6.

## IV. FLSA Analysis

### 1.     The Settlement Reflects a Reasonable Compromise Over Issues Actually In Dispute

Embedded within the first and second factor are two considerations: whether there are issues "actually in dispute," and whether the settlement "reflect[s] a reasonable compromise" over those issues.

In this case, the parties dispute liability.   The Class Representatives, on behalf of themselves and the putative class, contend that the Defendants violated the FLSA in various manners and had no good faith basis to believe that they were in compliance with the FLSA. Defendants, on the other hand, dispute Plaintiffs' various theories of liability and either contend the violations did not occur, or occurred sporadically but were not part of any regular policy or practice.

Because the parties dispute liability, the next inquiry is whether the settlement is reasonable.   This involves the consideration of several factors:

> In reviewing the record and evaluating the strength of the case to determine whether a proposed [FLSA] settlement is reasonable, adequate, and fair, a court should consider (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of class counsel and class members after receiving notice of settlement whether expressed directly or through failure to objection; and (6) the probability of plaintiff's success on the merits and the amount of the settlement in relation to the potential recovery.

See Lomascolo v. Parsons Brinkerhoff, Inc., 2009 WL 3094955, at *10 (E.D. Va. Sep. 28, 2009).[2]

---

[2]     Lomascolo has been cited by this Court on several occasions.  See Nyamira v. Little Kampala Services, LLC, 2018 WL 5026371, at *2 (D. Md. Oct. 17, 2018); Melendez v. Declercq, Inc., 2016 WL

i.   Extent of Discovery Conducted

The purpose of this inquiry is to determine whether "the Parties had adequate time to conduct sufficient discovery to 'fairly evaluate the liability and financial aspects of [the] case.'" Lomascolo, 2009 WL 3094955, at *11 (citation omitted).

In this case, the Parties engaged in an informal exchange of relevant documents and Class Counsel had sufficient wage/hour records, of sufficient quantity and quality for Class Counsel to perform the necessary calculations to determine the potential range of recovery in this case with respect to the Class Representative. With respect to the Class, additional records will be made available to Class Counsel per the terms of the Settlement Agreement. (Exh. 1; Settlement Agreement).

ii.   Stage of the Proceedings.

This factor analyzes whether the "proceedings advanced to a stage sufficient to permit the parties and their counsel to obtain and review evidence, to evaluate their claims and defenses and to engage in informed arms-length settlement negotiations with the understanding that it would be difficult and costly undertaking to proceed to the trial of this case." See Lomascolo, 2009 WL 3094955, at *10. That factor, too, is satisfied. As indicated above, Class Counsel has had sufficient time to review the Plaintiffs' wage/hour documents. The Parties have had time to investigate and also engaged in considerable discussions regarding the viability of Plaintiffs' claims and defenses raised in this case.

---

3387235, at *4 (D. Md. Jun. 14, 2016); Kianpour v. Restaurant Zone, Inc., 2011 WL 5375082, at *2 (D. Md. Nov. 4, 2011); Lane v. Ko-Me, LLC, 2011 WL 3880427, at *1 (D. Md. Aug. 31, 2011); Leigh v. Bottling Group, LLC, 2011 WL 1231161, at *5 (D. Md. Mar. 29, 2011); and Lopez v. NTI, LLC, 748 F.Supp. 2d 471, 478 (D. Md. 2010).

The Parties have taken into account the risks in proceeding. If discovery in this case continued, and if dispositive motions were filed, the Parties would likely have a trial in mid-2022. The Parties are all desirous of resolving this dispute before that time and avoiding the costs of trial.

### iii. Absence Of Fraud Or Collusion In The Settlement.

"There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." See Lomascolo, 2009 WL 3094955, at *12 (citations omitted). The Settlement Agreement was procured by arms-length negotiations between counsel for the Parties. Counsel for the Parties exchanged numerous proposals and counterproposals and engaged in a lengthy, all-day mediation before the Honorable William Connelly (Retired). They were able to narrow the bridge between their positions and reach a compromised settlement.

### iv. Experience Of Plaintiffs' Counsel.

As discussed in greater detail in Section III.C, *infra*, Class Counsel are qualified, experienced and competent, as demonstrated through the course of this litigation and other unpaid wage litigation.

### v. Opinion Of Counsel And Plaintiff

With respect to this factor, Class Counsel has advised the Class Representatives regarding the settlement agreement and has recommended judicial approval thereof. The prospective settlement fairly evaluated the risk in moving forward. Class Counsel proffers that they know of no objections made to the Settlement Agreement, at least at this time.

### vi. Amount Of The Settlement In Relation To The Potential Recovery

Following negotiations, the Parties have now reached a proposed settlement contingent upon court approval. The Parties have executed a formal settlement agreement with a general release ("Settlement Agreement"), which provides for payments to Opt-In Claimants based on their individual wage/hour claims and hours worked. Opt-In Claimants will be entitled to recover the difference between what they were actually paid and a recalculation of the wages owed to them based on the full minimum wage, including for all overtime hours worked, representing a 1.0x recovery on their minimum and overtime wage damages. Moreover, to the extent that the aggregate amount of the Wage Awards is less than $900,000.00, the multiplier for all the Class Representatives, Opt-In Plaintiffs and Opt-In Claimants will be evenly increased so that the aggregate amount of all Wage Awards equals no more than $900,000.00; provided that the multiplier for hours worked in Maryland is capped at 3.0 and the multiplier for hours worked in Virginia is capped at 2.0.

**2.     Attorney's Fees To Plaintiffs' Counsel**

The Court must also assess the reasonableness of the proposed award of attorneys' fees. Kianpour, 2011 WL 5375082, at *3; see also Gionfriddo, 2011 WL 2791136, at *3 (denying approval of settlement agreement because the parties did not provide "sufficient documentation to support the attorneys' fees stated in the settlement agreement."). The reasonableness of the fee award proposed in an FLSA settlement must be independently assessed, regardless of whether there are claims that a conflict of interest has tainted an employee's recovery. Kianpour, 2011 WL 5375082, at *3.

Generally, if a motion demonstrates that a proposed fee award was agreed upon separately and without regard to the amount paid to the Plaintiffs, then unless there is reason to believe that the Plaintiffs' recovery was somehow adversely affected by the amount of fees to be paid to the

16

attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to Plaintiffs' counsel. <u>Kianpour</u>, 2011 WL 5375082, at *3 (citation omitted) (quotation omitted); <u>see also</u> <u>Phelps v. Detail USA, Inc.</u>, 2012 WL 254113, at *2 (M.D. Fla. Jan. 19, 2012) ("[W]hen attorney's fees are negotiated separately form payment to plaintiff(s), 'an in depth analysis [of the reasonableness of the fees] is not necessary unless the unreasonableness is apparent from the face of the documents.'") (citation omitted).

As noted in Section III.F *infra*, the Parties seek a deferral on the deadline to request fees, which will be decided separately, and will be subject to either a private negotiation between the parties, or a fee contest whereby the fees will be decided by the Court. Leaving this issue to be separately negotiated at a later date cannot impact any potential claimant's recovery and should not prevent preliminary approval of an FLSA settlement collective.

## V.      PRELIMINARY APPROVAL OF THE CLASS SETTLEMENT

### A. Disputes and Other Factors Led to the Settlement

During the course of this litigation and the mediation, the parties identifies several disputes and other factors the lead to the settlement, some of which are outlined below:

<u>Notice of Tip Credit</u>: Plaintiffs claim that they were not given notice of the tip credit. Defendants maintain that Plaintiffs were informed of the tip credit requirements verbally at the time of hire. This factual dispute would need to be resolved at trial.

<u>Validity of Tip Pool</u>: Plaintiffs allege that Iron Age required employees to participate in an invalid tip pool that included "kitchen employees." Defendants claim that no kitchen employees participated in the tip pool. Defendants claim that the employees at issue, who are sometimes referred to as "station employees," are not part of the kitchen staff. Rather, the "station employees"

assist the servers with the servers' duties and responsibilities. Defendants claim these station employees are different from the typical back-of-the-house employees (e.g., dishwashers, cooks, and chefs), whose participation in a tip pool would be problematic.

Alleged taking of Employee Tips. Plaintiffs allege defendants retained their tips for alleged rules infractions. Defendants claim that if such retention occurred, it was sporadic and isolated. Defendants claim they do not do not have a centralized, company-wide policy of retaining tips.

Credit Card charges. Plaintiffs claim defendants credit card charges were excessive. Defendants claim their credit card processing charges were reasonable. Specifically, they claim a 4% credit card processing fee is well within the typical range of a credit card processing fee charged to a restaurant.

Other Factors. Plaintiffs considered other factors such as the reality of the restaurant business now and into the future, and potential collection issues if this case was to be tried years from now.

Defendants also raised the application of Bristol-Myers Squibb Co. v. Superior Court (BMS), 137 S.Ct. 1773 (2017) as an impediment to this claim. Courts have issued conflicting decisions about exactly how Bristol-Myers applies to out-of-state plaintiffs in Rule 23 claims. E.g., Molock v. Whole Foods Mkt. Grp., Inc., 952 F.3d 293 (D.C. Cir. 2020) (holding that a motion to dismiss targeting putative class members is premature prior to class certification); Mussat v. IQVIA, Inc., 953 F.3d 441 (7th Cir. 2020) (denying a motion to strike the class definition and holding that personal jurisdiction is not necessary vis-a-vis unnamed class members). How Bristol-Myers applies to out-of-state plaintiffs would likely have been a contested legal issue had this case proceeded further.

If defendants are able to prove one more of their defenses (or become insolvent), the plaintiffs could end up with nothing after lengthy litigation. Due to the risk of loss and to avoid the costs and inherent delays in litigation, the Parties mutually agreed to the settlement outlined below.

### B. Terms of Proposed Settlement for the Proposed Rule 23(e) Maryland Wage Settlement Class and the 29 U.S.C. 216(b) Fair Labor Standards Settlement Class.

The Parties seek preliminary approval of the Settlement Agreement, attached as Exhibit 1. "Preliminary approval of a class action settlement should be granted when the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or of segments of the class or excessive compensation for attorneys and appears to fall within the range of possible approval." Temporary Services, Inc., 2012 WL 2370523 at *6.

In this case, the proposed Settlement Agreement is entitled to a presumption of fairness because it is the product of informed, non-collusive negotiations by experienced counsel. The settlement has no obvious deficiencies and does not subject a single class member to any undue burden. Moreover, the Settlement Agreement provides for a substantial recovery to the Class, without improperly granting preferential treatment to the Class Representative.

In exchange for a release of claims, the Class Representatives, the Opt-In Plaintiffs, the members of the Proposed Rule 23(e) Maryland Wage Settlement Class and the members of the Proposed 29 U.S.C. 216(b) Fair Labor Standard Act Settlement Class who sign and return Settlement Claim and Release Form (Exh 1-A) will be entitled to the **greater of** (a) 100% (one hundred percent) of their actual damages or (b) their pro rata portion of a $900,000 up to a maximum of 300% (three hundred percent) of their actual damages incurred in Maryland and a

maximum of 200% (two hundred percent) of their actual damages incurred in Virginia. Damages will be determined based on total hours worked as determined by Defendants' wage and hour records and as calculated by experts retained by Class Counsel, subject to Defendants' review, approval and objection. The lookback period for the Proposed Rule 23(e) Maryland Wage Settlement Class is three years from the filing of the Complaint from March 4, 2017 to March 4, 2020. The lookback period for the 29 U.S.C. 216(b) Fair Labor Standards Settlement Class is from October 16, 2017 to March 4, 2020.

The difference in the treatment of damages for time worked in Maryland versus time worked in Virginia is explained by the fact that the Complaint alleges a claim under the Maryland Wage Payment and Collection Law which allows for triple damages, Md. Code Lab and Empl. Sec. 3-507.2(b) for the hours worked in Maryland while, in Virginia the Complaint alleged a claim under the FLSA, which allows for double damages. 29 U.S.C Sec. 216(b).

The difference in the lookback period for time worked in Maryland versus time worked in Virginia is due to the differences in the statute of limitations. Maryland's Wage Law have a three-year limitations period. The statute of limitations for a Fair Labor Standards Act (FLSA) is generally two years, but extends to three years if a jury finds that an employer willfully violated the statute. For the for the 29 U.S.C. 216(b) Fair Labor Standard Settlement Class, the parties compromised and selected roughly a 2.5-year lookback period as all parties recognize the defendants' willfulness would likely be a contested trial issue.

In addition, the Settlement Agreement provides for modest service payments (also referred in certain cases as "incentive awards" or "service fees") to the Class Representatives. The Settlement Agreement also provides lesser service payments to two Opt-In Plaintiffs, Ms. Chang and Mr. Hsieh, who served on the settlement committee and attended the mediation. These service

payments are reasonable in light of the fact that the service payments operate to compensate for any damage to reputations, reduced career options, or compensation for service incurred in assisting counsel's investigation and discovery of the class wide claims and serving as lead Plaintiff and/or as a member of the settlement committee during the settlement conference.

Fees and costs to be awarded to Class Counsel will await further negotiation between the parties, and failing that, a resolution by this Court. As fees and costs will be negotiated separately following the conclusion of the opt-in period, or they will be decided by the Court, there is an absence of evidence of any fraud or collusion.

The Parties have agreed on release language which is narrowly tailored and will not result in a loss of any FLSA claims for work performed by servers in Maryland and who "do nothing" - fail to opt into the settlement or request to be excluded. In other words, the proposed settlement preserves the FLSA rights for the worked servers performed in Maryland when a server fails to submit a Settlement and Release Claim Form. (Naturally, all individual class members who opt-out of the settlement will preserve all rights)

The Settlement Agreement provides that (1) all notice issues will be administered by a Class Administrator selected by the parties and paid for by the Defendants; and (2) a Claims Administrator will also be responsible for establishing and managing a Qualified Settlement Fund in accordance with the terms of the Settlement Agreement and any Order of the Court..

This settlement was the product of mediation overseen by a Retired Judge.   Under the circumstances, there is no reason to doubt the fairness of this Settlement Agreement nor are there any obvious deficiencies in either the Settlement Agreement or the process in which the Settlement Agreement was reached. See Temporary Services, Inc., 2012 WL 2370523 at * 12 ("[S]upervision

by a mediator lends an air of fairness to agreements that are ultimately reached.") (citing cases). The Settlement Agreement demonstrates that the rights of class members participating in settlement will be fairly compensated and the rights of nonparticipating class members have likewise been protected.

## V.     NOTICE TO THE SETTLEMENT CLASS

Under Fed. R. Civ. P. 23(e), class members are entitled to notice of the proposed settlement and an opportunity to object or opt-out before it is finally approved. Notice to the class should establish the time and place of a public hearing on the proposed settlement and specify the procedure for opting out, filing objections, and appearing at the settlement hearing.

The Parties propose a Notice of Wage/Hour Class Action Settlement, Settlement Hearing, and Claims Procedure ("Notice") (Exh. 2) that fully complies with Rule 23(e) and with the requirements of Due Process. The Notice is written in plain English and includes: (1) a description of the Settlement class; (2) a description of the proposed Settlement; (3) the names of counsel for the class; (4) a fairness hearing date; (5) a statement of the deadlines for filing objections to the Settlement, for submitting a claim, and for filing requests of exclusion; (6) the consequences of such exclusion; (7) the consequences of remaining in the Settlement class; (8) a statement of the Defendant's responsibility for Settlement class counsel's fees and expenses; and (9) information on how to obtain further information.

Moreover, the Settlement Agreement provides that notices will be mailed to the last known mailing addresses and a link to the notices will be texted to the mobile phone numbers (if available) for both of the proposed classes, all of which information will be provided to Class Counsel by Defendants. The form and content of the Notice, together with the manner of dissemination set

forth above is reasonably calculated to reach all class members. It is the "best notice practicable" under the circumstances and more than satisfies the requirements of due process and Rule 23

## VI.    FEE/COST DEFERRAL PROVISION AND NOTICE ON ATTORNEYS' FEE/COSTS.

The Settlement Agreement provides a "fee deferral" provision that provides that the Parties will privately negotiate a resolution of fees/costs, and present the Court with that negotiated amount at the time of the Final Fairness and Approval Hearing, or the Parties will ask the Court to determine the approp1iate amount of fees/costs to be paid by the Defendants in a litigated manner.

The Parties submit that a fee deferral provision in the Settlement Agreement is allowed pursuant to Fed. R. Civ. P. 23(h). See In re National Football League Players Concussion Injury Litigation, 821F.3d410, 445 (2016) (" ... the separation of a fee award from final approval of the settlement does not violate Rule 23(h) ... "); see also In re Online DVD-Rental Antitrust Litigation, 770 F.3d 934, 954 (9th Cir. 2010) (notice informing class members that class counsel would motion for attorneys' fees at a later time was sufficient).

Fed. R. Civ. P. 23(h), requires that "[a] claim for an award must be made by motion under Rule 54(d)(2) ... " and "[n]otice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Rule 23(h) also provides that class members and Defendants may object to the motion for a fee award.

Regardless of how attorneys' fees will be determined, Plaintiffs request that the Court approve a proposed mailing (Exh. 3) to all Class Members, except persons who opt-out, notifying Class Members that Class Counsel will file a motion seeking the Court's approval of attorneys' fees and costs, advising Class Members of (a) the amount of the legal fees sought by Class Counsel for Court approval/determination; (b) the amount of hours involved in the course of performing as

Class Counsel; (c) the hourly rates sought by Class Counsel; (d) the total amount of costs sought by Class Counsel; and (e) a deadline by which Class Members may file an objection with the Court concerning any proposed award of legal fees and costs.

This mailing is intended to comply with the requirements of both Rule 23(h), see Muransky v. Godiva Chocolatier, Inc., 905F.3d 1200, 1215 (11th Cir. 2018) ("courts interpreting Rule 23(h) have observed that the right to object to the fee motion under Rule 23(h)(2) necessarily means that courts must give notice of the attorney's fee motion itself.") (citing In re. Mercury Interactive Corp. Securities Litig., 618 F.3d 988, 989 (9th Cir. 2010)), by providing Class Members with "enough information to make an informed decision about whether to object to or opt out from the settlement." In re National Football League Players Concussion Injury Litigation, 821 F.3d at 446.

Notices concerning fees/costs to class members, containing even less information than the information proposed to be provided here, have been upheld by at least one U.S. Court of Appeals. See In re National Football League Players Concussion Injury Litigation, 821 F.3d at 446 (holding that a class notice was sufficient when it informed class members of the likely estimated amount of attorneys' fees, the source of the fees, and the Defendants' position on the fees, even though it omitted the number of hours worked by class counsel and failed to identify any contingency fee arrangements). Thus, the Parties request that the Court approve the "fee deferral" provision in the Settlement Agreement, and approve the attached notice informing Class Members of Class Counsel's intention to motion for attorneys' fees. (Exh. 3).

## V. CONCLUSION

For all the foregoing reasons, the parties respectfully request that the Court grant this Motion, and preliminarily approve a Rule 23(e) settlement class. Under an analysis of FLSA case

law or an analysis of the proposed settlement of MWHL and MWPCL claims brought pursuant to Rule 23, the proposed Settlement Agreement is fair, reasonable and adequate, and there is no reason to doubt its fairness.

Respectfully submitted by:

 /s/ James Rubin *(signed with permission)*
James Edward Rubin, FBN 15605
The Rubin Employment Law Firm, P.C.
600 Jefferson Plaza, Suite 204
Rockville, Maryland 20852
(301) 760-7014
jrubin@rubinemploymentlaw.com
-and-
Howard B. Hoffman, FBN 25965
Jordan Song En Liew, FBN 20509
Hoffman Employment Law, LLC
600 Jefferson Plaza, Suite 204
Rockville, Maryland 20852
(301) 251-3752
hhoffman@hoholaw.com
jliew@hoholaw.com

*Counsel for Plaintiffs*

 /s/ Scott A. Mirsky
James R. Hammerschmidt, FBN 22223
(301) 951-9338 | jrh@paleyrothman.com
Scott A. Mirsky, FBN 25081
(301) 968-1648 | smirsky@paleyrothman.com
Paley, Rothman, Goldstein, Rosenberg,
 Eig & Cooper, Chartered
4800 Hampden Lane, Sixth Floor
Bethesda, Maryland 20814

*Counsel for Defendants Iron Age Rockville,
LLC, Iron Age Baltimore, LLC, Iron Age
Annandale, LLC, Iron Age Centreville, LLC,
Myung Ae Sim and Hannah Sim*

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of January, 2021, a copy of the foregoing Joint Motion, along with all Exhibits and other attachments, was filed via the Electronic Case Filing System (ECF) maintained by the U.S. District Court for the District of Maryland, and is available for viewing and downloading from the ECF system.

 /s/
Scott A. Mirsky