## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **CHARLES CHANG, et al** | * | |
| *On behalf of themselves and*<br>*All others similarly situated* | * | |
| | * | |
| **Plaintiffs,** | * | |
| **v.** | * | **Civil Case: 20-cv-0597 (PWG)** |
| | * | |
| **IRON AGE ROCKVILLE, LLC**<br>**et al** | * | |
| | * | |
| **Defendants** | * | |
| | * | |

### JOINT MOTION FOR ORDER FOR FINAL CERTIFICATION
### OF THE RULE 23 CLASS SETTLEMENT CLASS AND FINAL
### APPROVAL OF THE SETTLEMENT AGREEMENT

Plaintiffs, Charles Chang, Won Song, and, Dongxiong Zhu, on behalf of themselves and others similarly situated, and Defendants, Iron Age Rockville, LLC, Iron Age Baltimore, LLC, Iron Age Annandale, LLC, Iron Age Centreville, LLC, Myung Ae Sim, and Hannah Sim, by and through their respective counsel, jointly move this Court for an Order approving a settlement reached in this action and certifying a Fed. R. Civ. P. 23 Settlement Class under the Maryland Wage/Hour Law ("MWHL"), Md. Ann. Code LE art. § 3-401 et seq. and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Ann. Code LE art. § 3-501 et seq., and a Settlement Opt-in Class pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §216(b).

### I.    BACKGROUND

On March 4, 2020, three Plaintiffs, (hereafter "The Class Representatives") filed a hybrid action: (1) a collective action arising under the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. Section 201, et seq. and (2) a Rule 23 class action claim arising under the Maryland Wage

and Hour Law, Md. Ann LE Art. Section 3-401, et seq., and the Maryland Wage Payment and Collection Law, Md. Ann LE Art. Section 3-501, et seq.  Since that time, four additional Plaintiffs, Ashley Chang, Justin Hsieh, Ryan Cho and Maxwell Burke, have opted in to this lawsuit (hereafter the "Opt-In Plaintiffs").

The Plaintiffs sued seven Defendants, three individuals and four limited liability companies. Two of the individual Defendants, Myung Sim and Hannah Sim, own, operate or manage one or more of the four corporate Defendants.[1]  Each corporate Defendant in turn operates one "Iron Age" restaurant.   Two restaurants are in located in Maryland (Rockville and Baltimore).  Two are in Virginia (Annandale and Centreville).

On September 24, 2020, the parties and their attorneys attended an all-day mediation before the Honorable William Connelly (Retired) and reached a settlement in principle.  On January 19, 2021, the parties filed a Joint Motion for Order Preliminarily Approving Settlement Agreement Establishing a Settlement Class Pursuant to Fed. R. Civ. P. 23(e) and 29 U.S.C. Section 216(b). (ECF Doc. 35).  On February 12, 2021, the Court granted the Joint Motion and entered a Preliminary Approval Order.  (ECF Doc. 38).

The Preliminary Approval Order appointed Plaintiffs Charles Chang, Won Song, and Dongxiong Zhu as Class Representatives and also appointed Howard B. Hoffman, Esq., and Jordan Liew, Esq. of Hoffman Employment Law, LLC, and James E. Rubin, Esq. of The Rubin Employment Law Firm, P.C. as Class Counsel.  Id.  By further agreement of the parties and with approval of the Court, Simpluris, Inc. was designated the Claims Administrator.  Id.  Finally, the Preliminary Approval Order also approved the notice forms agreed to by the parties; instructed the parties to comply with the Settlement Agreement; and set the final fairness hearing to be held on

---

[1]    Plaintiffs were unable to locate or serve the third individual Defendant, Kenny Kim.

December 17, 2021.  Id.

As part of the Settlement Agreement, the Court preliminarily certified two settlement classes of the following individuals:[2]

(1) Maryland Class: Any and all current or former servers employed by an "Iron Age" Restaurant in Maryland between March 4, 2017 and March 4, 2020, who performed work as a server at an Iron Age restaurant in Maryland between March 4, 2017 and March 4, 2020, and who received hourly wages less than the then applicable Maryland State minimum wage ($8.75/hour from 3/4/17 to 6/30/17; $9.25/hour from 7/1/17 to 6/30/18; $10.10/hour from 7/1/18 to 12/31/19; and $11.00/hour from 1/1/20 to 3/4//20).

(2) Virginia Class: Any and all current or former servers employed by an "Iron Age" Restaurant in **Virginia** between October 16, 2017 and March 4, 2020, who performed work as a server at an Iron Age restaurant in **Virginia** between October 16, 2017 and March 4, 2020, and who received hourly wages less than the Federal minimum wage.[3]

Id.

The Settlement Agreement allowed for a sixty (60) day opt-in period following a mailing of the Class Notice and Settlement Claim Form on March 15, 2021, to the last known addresses of the Settlement Class Members, as well as text notification. (Exh. 1; Decl. of Claims Administrator, ¶8). Sixty-Nine (69) Settlement Class Members timely submitted complete and correct Settlement

---

[2]    The parties submit this Motion without prejudice to any position that they may later be forced to take in the event that this Motion is denied and that the litigation continues.

[3]    The Court's Order also provided that "[e]xcluded from the Settlement Class are Defendants, their officers and managers, the members of their immediate families, and their respective representatives, heirs, successors, and assigns, as well as any entity in which Defendants have or had a controlling interest. Members of one Sub-Class are not excluded from being members of the other Sub-Class." (ECF Doc. 38, ¶4(b)).

Claim Forms. (Exh. 1; Decl. of Claims Administration, ¶ 10). An additional three (3) Settlement Class Members submitted late, but otherwise complete and correct, Settlement Claim Forms; these three (3) Settlement Class Members were permitted to opt into the Settlement Class late following the submission of a consent motion by Plaintiffs (ECF Doc. 40), and approval of the Court. (ECF Doc. 41). Of the 312 addresses mailed, thirty-six (36) were returned to the Claims Administrator. (Exh. 1; Decl. of Claims Administrator, ¶9). When the Claims Administrator received a returned Notice, the Claims Administrator performed an advanced address search (i.e. skip trace) to identify a current address. Of the thirty-six (36) returned Notices, the Claims Administrator obtained seventeen (17) updated addresses and mailed Notices to those addresses. (Exh. 1; Decl. of Claims Administrator, ¶9). One class member submitted an opt-out notice. (Exh. 1; Decl. of Claims Administrator, ¶ 12).

Defendants produced wage and hour records for each person who opted into the settlement, and Plaintiff's Expert used those documents to calculate individualized damages. Under the Settlement Agreement, class members are entitled to recover the difference between what they were actually paid and a recalculation of the wages owed to them based on the full minimum wage, including for all overtime hours worked, representing a 1.0x recovery on their minimum and overtime wage damages. Moreover, because the aggregate amount of the Wage Awards was less than $900,000.00, the multiplier for all the Class Representatives, Opt-in Plaintiffs and Opt-in Claimants increased so the aggregate amount of all Wage Awards equaled $900,000.00, which ultimately resulted in a 1.42x recovery on each class member's minimum and overtime wage damages.

Additionally, each Class Representative (Charles Chang, Won Song, and Dongxiong Zhu) will receive a Service Payment of $8,500.00, while two Opt-in Plaintiffs who participated in the September 24, 2020 mediation, will each receive a Service Payment of $4,000.00. In total, class

members will receive no less than $933,500.00.

On November 19, 2021, the parties also reached an agreement on the issue of attorneys' fees and costs. Inclusive of work going forward, including attending the Final Fairness Hearing, The Rubin Employment Law Firm, P.C. and Hoffman Employment Law, LLC have agreed to settle attorneys' fees and costs for a total of $200,000.00.

Pursuant to the Settlement Agreement, the Class Representatives and Pre-Settlement FLSA Opt-in Plaintiffs agree to a general release of all claims, including but not limited to any wage-related claims through September 25, 2020. The Maryland Opt-in Claimants and FLSA Opt-in Claimants also agree to release all wage-related claims through September 25, 2020. In addition, as part of the settlement, the Maryland Wage Class Members who did not Opt-out agree (through their Class Representatives) to release all wage-related claims through September 25, 2020.

## II.     STANDARD OF REVIEW

Because a release of FLSA claims and a settlement of a putative class action under Fed.R.Civ.P. 23 each require Court approval, but under different standards, the parties will address each appropriate standard of review in turn. See Alloways et al. v. Cruise Web, Inc., CBD 172811, 2019 WL 1902813, *4 (D. Md. Apr. 29, 2019) ("In seeking approval of the proposed Settlement Agreement, the parties are resolving a 'hybrid wage-and-hour law case' due to the combination of collective action claims raised under the FLSA and the state law claims brought as a class action under Federal Rule of Civil Procedure 23 ("Rule 23")); see also Edelen et al. v. American Residential Services, LLC, 2013 WL 3816986 at *3 (D. Md. July 22, 2013) ("Because the proposed Settlement Agreement seeks to resolve a so-called hybrid wage- and-hour law case that raises both collective action claims under the FLSA and class action claims under the MWHL and MWPCL, two separate standards are implicated.").

### A. Approval of FLSA Claims

Court approval of any FLSA claim is required. "Under the FLSA, 'there is judicial prohibition against the unsupervised waiver or settlement of claims.'" Kianpour v. Restaurant Zone, Inc., 2011 WL 5375082, *2 (D. Md. Nov. 4, 2011) (quoting Taylor v. Progress Energy, Inc., 493 F.3d 454, 460 (4th Cir. 2007); see also Saman v. LBDP, Inc., 2013 WL 2949047 (D. Md. June 13, 2013); Gionfriddo v. Jason Zink, LLC, 2011 WL 2791136, at *2 (D. Md. July 15, 2011) ("Settlement agreements that resolve claims pursuant to the FLSA must receive court approval.")

"While the Fourth Circuit has not directly addressed the factors to be considered in deciding motions for approval of such settlements, district courts in this circuit have typically employed the considerations set forth in Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350 (11th Cir. 1982)." Kianpour, 2011 WL 5375082, at *2; see also Gionfriddo, 2011 WL 2791136, at *2 (indicating the "factors used to evaluate class action settlements under Federal Rule of Civil Procedure 23(e) are usually applied."); see also Nyamira v. Little Kampala Services, LLC, 2018 WL 5026371, at *2 (D. Md. Oct. 17, 2018).

"The settlement must 'reflect[ ] a fair and reasonable resolution of a bona fide dispute over FLSA provisions,' which includes a finding with regard to (1) whether there are FLSA issues actually in dispute, (2) the fairness and reasonableness of the settlement in light of the relevant factors from Rule 23, and (3) the reasonableness of the attorneys' fees, if included in the agreement." Duprey v. Scotts Co. LLC, 30 F. Supp. 3d 404, 408 (D. Md. 2014) (citing Saman, 2013 WL 2949047 at *3). See also Lomascolo v. Parsons Brinckerhoff, Inc., 2009 WL 3094955 at *10 (E.D. Va. Sept. 28, 2009); Lane v. Ko–Me, LLC, No. DKC–10–2261, 2011 WL 3880427, at *2–3 (D. Md. Aug. 31, 2011)). "These factors are most likely to be satisfied where there is an 'assurance of an adversarial context' and the employee is 'represented by an attorney who can protect [his] rights under the statute.'" Duprey, 30 F. Supp. 3d at 408 (citing Lynn's Food Stores, 679 F.2d at

1354).

FLSA settlements will be approved if the settlement reflects a "reasonable compromise" over the issues in dispute, Lopez v. NTI, LLC, 748 F.Supp. 2d 471, 478 (D. Md. 2010), provided that the parties seeking approval of a proposed settlement have provided the court with sufficient information to examine and assess such disputed matters. Lane v. Ko-me, LLC, 2011 WL 3880427, *2 (D. Md. Aug. 31, 2011). Importantly, in considering whether an FLSA settlement is reasonable and fair to the parties, there is a "'strong presumption in favor of finding a settlement [to be] fair'." Lomascolo, 2009 WL 3094955 at *10 (internal citations omitted). A settlement is not a trial, and a court's role is more of a balancing of the likelihoods, than actual determinations of fact and law. Id. Compromise is the essence of settlement, and "a trial court should not make a proponent of a proposed settlement justify each term of a settlement agreement against a hypothetical or speculative measure of what concessions might have been gained since inherent in compromise is a yielding of absolutes and an abandoning of highest hopes."[4] Id. "A court is entitled to rely on the judgment of experienced counsel for the parties in performing this balancing task and absent fraud, collusion or the like, a court should be hesitant to substitute its own judgment for that of counsel." Id. With these factors in mind, courts may recognize and approve agreements that reflect a "less-than-full-value compromise in the FLSA settlement process." Galvez v. Americlean Services Corp., 2012 WL 2522814 at *4 (E.D. Va. June 29, 2012) (citing Alleyne v. Time Moving & Storage Inc.,

---

[4]    Garza v. Sporting Goods Properties, Inc., No. CIV. A. SA-93-CA-108, 1996 WL 56247, at *11 (W.D. Tex. Feb. 6, 1996) (A "proposed settlement is not required to 'achieve some hypothetical standard constructed by imagining every benefit that might someday be obtained in contested litigation.' " (citation omitted))

264 F.R.D. 41, 57-58 (E.D.N.Y. 2010) (approving settlement of FLSA claims at thirteen to seventeen percent of maximum recovery)).

      In the instant action, and as discussed in Section III below, evaluation of all requisite factors warrants the approval of the parties' proposed settlement because it reflects a reasonable compromise of all issues and claims in dispute.

### B. Approval and Certification of Rule 23 Settlement Class

      Federal Rule of Civil Procedure 23(e) requires judicial approval of any proposed class action settlement. "If not a ground for certification *per se,* certainly settlement should be a factor, and an important factor, to be considered when determining certification." In re A.H. Robins Co., Inc. 880 F.2d 709, 740 (4th Cir. 1989) *abrogated by* Amchem Products, Inc, v. Windsor, 521 U.S. 591 (1997). The Supreme Court has affirmed that "[settlement] is relevant to a class certification." Amchem Products, 521 U.S. at 619. However, certification of a class for purposes of settlement must satisfy the pertinent Rule 23 requirements. Id. "When a district court is presented with a class settlement agreement, the court must first determine that 'the requirements for class certification under Rule 23(a) and (b) are met, and must separately 'determine that the settlement is fair to the class under [Rule] 23(e).'" In re NFL Players' Concussion Injury Litig., 775 F.3d 570, 581 (3rd Cir. 2014) (quoting Sullivan v. DB Invs., Inc., 667 F.3d 273, 319 (3rd Cir. 2011) (*en banc*)) (alteration in original).

      "A class action will be certified only if it meets the four prerequisites identified in Rule 23(a) and also fits within one of the three subdivisions of Rule 23(b). The United States Supreme Court has held that district courts must pay 'undiluted, even heightened attention' to class certification requirements in the settlement context." Singleton et al. v. Domino's Pizza, LLC, et al., 976 F.Supp.2d 665, 674 (D. Md. 2013) (quoting Amchem Prods., Inc, v. Windsor, 521 U.S. 591, 620 (1997) (internal quotation marks omitted)); see also Alloways, 2019 WL 1902813, at *6.

Rule 23(a) provides as follows:

(a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(b)(3) permits a class action to be maintained only if it can be concluded that: (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

"Pursuant to Rule 23(e), a settlement agreement that binds members of a class action can only be approved upon a 'finding that it is fair, reasonable, and adequate.' " Singleton, 976 F.Supp.2d at 678. "'The 'fairness' prong is concerned with the procedural propriety of the proposed settlement agreement, while the 'adequacy' prong focuses on the agreement's substantive propriety.' " Id. (citations omitted).

A court should approve a settlement which is "fair, adequate, and reasonable" to the members of the class. In re Jiffy Lube Securities Litigation, 927 F.2d 155 (4th Cir. 1991) ("Jiffy Lube"); Troncelliti v. Minolta Corporation, 666 F. Supp. 750 (D. Md. 1987). In Jiffy Lube, the Fourth Circuit identified the factors relevant in determining the fairness and adequacy of settlement. The four factors for determining the "fairness" of a settlement are:

(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel.

In re Jiffy Lube Securities Litigation, 927 F.2d at 159; see also Decohen v. Abbassi, LLC, 299 F.R.D. 469, 479 (D. Md. April 17, 2014).

In turn, the five Jiffy Lube factors for determining the "adequacy" of a settlement are:

(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement.

927 F.2d at 159; see also Decohen, 299 F.R.D at 479.

As stated in Decohen, there is a "'strong presumption in favor of finding a settlement is fair.'" Decohen, 299 F.R.D at 479 (quoting Lomascolo v. Parsons Brinckerhoff, Inc., 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009). Nevertheless, as discussed below, the application of the Jiffy Lube factors to the proposed settlement in this case demonstrates that it is fair, adequate, and reasonable.

## III.    ANALYSIS

### A. FLSA Analysis

The Parties submit that the Court should approve the release of all FLSA claims in this action because the Settlement Agreement reflects a reasonable compromise over issues in actual dispute between the parties. The reasonableness of the Settlement Agreement is apparent because: (1) there were actually FLSA issues in dispute; (2) the amount of the settlement falls within the range of what is fair and reasonable; and (3) the attorneys' fees are reasonable. Further, no class member has filed any objection to the settlement.

#### 1.    Actual FLSA Issues In Dispute

First, there is no doubt the parties dispute liability.  The Class Representatives, on behalf of themselves and the putative class, contend that the Defendants violated the FLSA in various manners and had no good faith basis to believe that they complied with the FLSA.  Defendants, on the other hand, dispute Plaintiffs' various theories of liability and either contend the violations did not occur or occurred sporadically but were not part of any regular policy or practice.

#### 2.    Settlement is Fair and Reasonable

Second, the amount of the settlement is fair and reasonable.  "In reviewing the record and evaluating the strength of the case to determine whether a proposed [FLSA] settlement is reasonable, adequate, and fair, a court should consider (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of class counsel and class members after receiving notice of settlement whether expressed directly or through failure to objection; and (6) the probability of plaintiff's success on the merits and the amount of the settlement in relation to the potential recovery."  Lomascolo, 2009 WL 3094955 at *10.

### a. Extent of Discovery

The purpose of this inquiry is to determine whether "the Parties had adequate time to conduct sufficient discovery to 'fairly evaluate the liability and financial aspects of [the] case.'" Lomascolo, 2009 WL 3094955 at *11 (citation omitted).  As part of the terms of the Settlement Agreement, Defendants produced comprehensive wage and hour and wage payment documents for every single Class Representative, Opt-in Plaintiff and Opt-in Claimant, allowing Class Counsel's Expert to perform individualized damage calculations.  Had this case not been settled, these are precisely the kind of documents that Plaintiffs would have sought from Defendants during the course of discovery, and the same kind of damage calculations would have been performed as part of Plaintiff's Rule 26(a)(2) expert report and disclosure.

### b. Stage of the Proceedings

This factor analyzes whether the "proceedings advanced to a stage sufficient to permit the parties and their counsel to obtain and review evidence, to evaluate their claims and defenses and to engage in informed arms-length settlement negotiations with the understanding that it would be difficult and costly undertaking to proceed to the trial of this case."  See Lomascolo, 2009 WL

3094955 at *10. That factor, too, is satisfied. As indicated above, Defendants provided Class Counsel with comprehensive wage and hour and wage payment documents for every single Class Representative, Opt-in Plaintiff and Opt-in Claimant, thereby allowing their Expert to perform detailed and individualized damage calculations. Moreover, while this case is being resolved at a relatively early stage in the litigation, the Class Representatives, Opt-in Plaintiffs and Opt-in Claimants are receiving at least 1.42x of their respective actual damages.

### c. Absence of Fraud or Collusion in the Settlement

"There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." See Lomascolo, 2009 WL 3094955, at *12 (citations omitted). The Settlement Agreement was procured by arms-length negotiations between counsel for the parties. Counsel for the parties exchanged numerous proposals and counterproposals and engaged in a lengthy, all-day mediation before the Honorable William Connelly (Retired). They were able to narrow the gap between their positions and reach a compromised settlement.

Similarly, the parties' actions during the calculation of damage illuminate the arms-length relationship between counsel as Defendants' counsel carefully audited the damage calculations and raised a number of issues that required further discussion, and ultimately a few rounds of revisions to the damage calculations.

### d. Experience of Plaintiffs' Counsel

As discussed in greater detail below, Class Counsel are qualified, experienced and competent, as demonstrated through the course of this litigation and other unpaid wage litigation.

### e. Opinion of Counsel and Plaintiffs

With respect to this factor, Class Counsel has advised the Class Representatives regarding the settlement agreement and has recommended judicial approval thereof. The prospective settlement fairly evaluated the risk in moving forward. Class Counsel proffers that they know of

no objections made to the Settlement Agreement,[5] even after Plaintiffs' Expert performed damage calculations and Class Counsel informed Class Representatives, Opt-in Plaintiffs and Opt-in Claimants of the amounts of their recovery.

*f.   Amount of the Settlement in Relation to the Potential Recovery*

Pursuant to the terms of the Settlement Agreement, the Class Representatives, Opt-in Plaintiffs and Opt-in Claimants will receive 1.42x their calculated minimum and overtime wage damages because the aggregate Wage Damages fell below $900,000.00.  This is a substantial recovery and combined with the Service Fees, the total recovery will be no less than $933,500.00.

3.   Attorney's Fees are Reasonable

After months of arms-length negotiations, the parties reached an agreement of $200,000.00 on Class Counsel's Attorneys Fees and Costs, inclusive of all time moving forward as well as the substantial costs of the Expert who performed the damage calculations for seventy-six (76) individuals across four years.  The parties negotiated attorneys' fees and costs separately and secondarily and a reached consensus on November 19, 2021, months after the terms of the Settlement Agreement had been reached and the recovery of the class members had been calculated.

The parties disagreed over the proper measure of calculating attorneys' fees and costs in this case.  Plaintiffs' counsel argued that where a settlement fund is established, courts typically use a "percentage of the fund" or "percentage of recovery" approach, which would have entitled Plaintiffs' counsel to approximately $300,000.00.  See, e.g., Boyd v. Coventry Healthcare, Inc.,

---

[5]      "Generally, 'the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members.' " Nunez v. BAE Sys. San Diego Ship Repair Inc., 292 F. Supp. 3d 1018, 1040 (S.D. Cal. 2017) (quoting Wren v. RGIS Inventory Specialists, No. C-06-05778 JCS, 2011 WL 1230826, at *11 (N.D. Cal. Apr. 1, 2011)).

299 F.R.D. 451, 464-466 (D. Md. 2014) (observing that "percentage of recovery" method is usually 25-30% of the value of the class settlement, and granting an award of fees/costs in the amount of 28%); <u>Acevedo v. Sw. Airlines Co.</u>, No. 1:16-CV-00024-MV-LF, 2019 WL 6712298, at *4 (D.N.M. Dec. 10, 2019) ("I find that the requested attorneys' fee award of 33.33% of the gross recovery is reasonable and in line with similar awards."), <u>report and recommendation adopted</u>, No. 1:16-CV-00024-MV-LF, 2020 WL 85132 (D.N.M. Jan. 7, 2020).

On the other hand, Defendants' counsel argued for a calculation based on the familiar lodestar method.

Nevertheless, in the interest of compromise, the parties reached an appropriate measure of attorneys' fees and costs that may be approved using either method. Although this case settled relatively early, it still involved complex legal issues and the management of a large class across four different locations and two different jurisdictions. That this case is approaching two years in length despite the early settlement, is a testament to the amount of labor that was still required in order to bring this case to closure.

Accordingly, the Court should find that the Settlement Agreement represents a reasonable and fair compromise and certify a collective settlement class under 29 U.S.C. § 216(b).

**B. Rule 23 Analysis**

"A class action will be certified only if meets the four prerequisites identified in Rule 23(a) and also fits within one of the three subdivisions of Rule 23(b)." <u>Singleton et al. v. Domino's Pizza, LLC,</u> 976 F.Supp.2d 665, 674 (D. Md. 2013).

1. <u>Rule 23(a) Requirements</u>

a. *Numerosity*

Although there is no specific rule on how many members a class must have, the Fourth Circuit has indicated that a class with over thirty members satisfies the numerosity requirement.

Williams v. Henderson, 129 Fed. Appx. 806, 811 (4th Cir. 2005). The employees that make up the class in this case totaled 312. Accordingly, this requirement is satisfied.

*b. Commonality*

Commonality is satisfied if only one legal or factual issue is shared by all class members. Robinson v. Carolina First Bank NA, No. 7:18-CV-02927-JDA, 2019 WL 2591153, at *5 (D.S.C. June 21, 2019).

The Supreme Court has held that claims must "depend upon a common contention," and "[t]hat common contention, moreover, must be of such a nature that it is capable of classwide resolution - which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 350 (2011) ("What matters to class certification ... is not the raising of common 'questions'—even in droves—but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.").

This requirement is met where a defendant engaged in a common course of conduct. In Edelen, supra, a court in this District held that a common question of law existed where defendants had a common practice of calculating overtime pay that excluded non-hourly forms of compensation. 2013 WL 3816986 at *6.

In this case, there are common allegations that relate to the manner in which the Defendants took a tip credit, failed to pay the proper rate for overtime, failed to give proper notice of the tip credit, and took deductions from tips, including by requiring that tips be shared with employees working in the back of the house, by taking 4% of tips to pay for credit card processing, and by reducing tips for alleged rule violations. All of these allegations were disputed by the Defendants.

The legal and factual issues concerning the claims raised in this case are common to all Maryland Class Members, with the amount of damages being the only difference.

### c.  Typicality

The Supreme Court has noted that "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." Gen. Tel. Co. v. Falcon, 457 U.S. 147, 158 n.13 (1982). "To show typicality between a plaintiff and the class, the plaintiff 'must be part of the class and possess the same interest and suffer the same injury as the class members.' " Boyd v. Coventry Health Care Inc., 299 F.R.D. 451, 458 (D. Md. 2014) (quoting Gen. Tel. Co., 457 U.S. at 156)).  For typicality to be satisfied, the representative party's interest in prosecuting his/her own case must simultaneously tend to advance the interests of the absent class members. Deiter v. Microsoft Corp., 436 F.3d 461, 466 (4th Cir. 2006). In this case, the claims of the Class Representatives are the same as the claims of each of the proposed classes. For example, the Class Representatives allege that they were subject to deductions from their tips for "station"  workers and the 4% deduction for credit card tips. Complaint ¶ 54 and 65.  Thus, a sufficient relationship exists between the injury to the Class Representatives and the proposed class. Singleton, 976 F.Supp.2d at 676.

### d.  Adequacy

Rule 23(a)(4) requires that the "named [Plaintiff] will fairly and adequately protect the interests of the class." Simpson v. Specialty Retail Concepts, Inc., 149 F.R.D. 94, 102 (M.D.N.C. 1993). This requirement is met if it appears that (1) the Class Representative has interests in common with, and not antagonistic to, the proposed class's interest; and (2) the Class Representative's attorneys are qualified, experienced and generally able to conduct the litigation. Id.; Decohen, 299 .F.R.D. at 477; Singleton, 976 F.Supp.2d at 676.

In this case, the Class Representatives and the putative class satisfy both prongs of the "adequacy" test. Though the parties reached a settlement early in the litigation, the Class Representatives and Class Counsel have vigorously prosecuted the case on behalf of the class. The Class Representatives' interests are aligned with those of the class members and the Class

Representatives share an interest with class members in establishing that Defendants' policies during the relevant periods violated the MWHL and MPWCL.

Finally, and as discussed in greater detail below, Class Counsel are qualified, experienced and competent, as demonstrated through the course of this litigation and other unpaid wage litigation. Decohen, 299 F.R.D. at 477 ("class counsel have shown by their vigorous prosecution of this litigation for three and a half years that they are qualified, experienced, and able to conduct the litigation."). There is no apparent conflict between the Class Representative and the interests of the settlement class. Accordingly, adequacy is satisfied.

2. Rule 23(b)(3) Requirements

Rule 23(b)(3) requires that the Court must find that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Decohen, 299 F.R.D. at 477 (citations omitted); see also Alloways, 2019 WL 1902813 at *8. "The predominance inquiry focuses on whether liability issues are subject to class-wide proof or require individualized and fact-intensive determinations." Edelen, 2013 WL 3816986 at *7. "Certification under Rule 23(b)(3) is appropriate when 'settling the parties' differences in a single proceeding serves their interests by achieving 'economies of time, effort and expense' and promoting uniformity of decisions as to similarly situated individuals. Decohen, 299 F.R.D. at 477 (citations omitted).

a. *Common Questions of Fact Predominate:*

"The predominance inquiry focuses on whether liability issues are subject to class-wide proof or require individualized and fact-intensive determinations." Singleton, 976 F.Supp.2d at 677. "Inasmuch as the predominance test focuses on the nature of the claims asserted, common questions predominate regardless of any difference in the amount of damages recoverable by individual class

17

members." <u>Temporary Services, Inc, v. AIG, Inc.,</u> 2012 WL 2370523, *4 (D.S.C. June 22, 2012). In this case, the claims of the Class Representatives and the members of the proposed class arise from the allegations that the Defendants violated the tip credit rules and therefore are not entitled to take such credit. The Complaint alleges no conduct or claims particular to the Class Representatives that were not practiced upon every member of the proposed class. Accordingly, the issues of fact arising from Defendants' conduct predominate over any individual issues, making class treatment appropriate here. <u>See</u> <u>Temporary Services, Inc.,</u> supra. "Although the determination of damages for each class member would require a certain degree of individualized inquiry ... such computations do not require 'separate mini-trials.'" <u>Edelen,</u> 2013 WL 3816986 at *7 (citation omitted).

### b. Common Questions of Law Predominate

As set forth above, the Class Representative and the members of the settlement class all share common questions of law, insofar as the case involves the application of the MWHL and MWPCL. There are no variations in these laws, with respect to the claims, that may defeat predominance.

### c. A Class Action Is Superior To Other Available Methods To Adjudicate This Action

In this case, a class action settlement is superior because if a considerable number of servers pressed individual successive claims against the Defendants, it would be cost prohibitive and could threaten over time the ability of the Defendants to not only defend themselves but to pay settlements or judgments that may be entered in favor of the individuals. Indeed, no less than seventy-six (76) individuals seek recovery against the Defendants, including the Class Representatives, Opt-in Plaintiffs, and Opt-in Claimants.  Thus, a class action has the benefit of allowing Defendants to address the claims of all interested persons.

18

Moreover, a class action provides court-sanctioned notice to interested individuals and provides them with the information necessary to make an informed decision concerning litigation against the Defendants, and as noted above, dozens of individuals acted on that information.

Further, a factor in determining whether class settlement is superior to other available methods to adjudicate this action is the fact that if any class members wished to initiate individual lawsuits, they had the choice to opt-out. Edelen, 2013 WL 3816986 at *7. Only one class member opted out of this litigation. None have filed objections, and "no class member has separately initiated litigation against Defendants." Id. Accordingly, granting final approval to the proposed settlement class is a superior method to adjudicate these claims.

### 3. Final Approval of Settlement Agreement Under Rule 23(e)

Pursuant to Rule 23(e), a settlement agreement that binds members of a class action can only be approved upon a "finding that it is fair, reasonable, and adequate." Edelen, 2013 WL 3816986 at *8.

While approval of a proposed class action settlement by a court is discretionary, Flinn v. FMC Corp., 528 F.2d 1169, 1173 (4th Cir. 1975), cert. denied, 424 U.S. 967 (1976), there is a "strong initial presumption that the compromise is fair and reasonable." Rolland v. Cellucci, 191 F.R.D. 3, 6 (D. Mass. 2000). The law favors settlement and "[i]t is indeed the preferred means of dispute resolution, particularly in complex class action litigation." In re Washington Public Power Supply System Securities Litigation, 720 F. Supp. 1379, 1387 (D. Ariz. 1989), aff'd, 955 F.2d 1268 (9th Cir. 1992); see also Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of San Francisco, 688 F.2d 615, 625 (9th Cir. 1982) ("Finally, it must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation, and even more so where the subject matter is employment discrimination.")

Courts therefore approve class settlements which are reasonable compared to the likely

results of litigation, <u>Shlensky v. Dorsey,</u> 574 F.2d 131, 147 (3d Cir. 1978), and which result from good faith, arms-length negotiations. <u>Weinberger v. Kendrick,</u> 698 F.2d 61, 74 (2d Cir. 1982).

Here, Class Counsel has had many years of experience in complex and class action litigation involving employment law, specifically wage and hour laws. As a result, their judgment that the settlement is "fair, reasonable and adequate" is entitled to great weight. As stated by the court in <u>Cotton v. Hinton,</u> 559 F.2d 1326, 1330 (5th Cir. 1977):

> In performing this balancing task, the trial court is entitled to rely upon the judgment of experienced counsel for the parties . . . [citation omitted]. Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.

<u>see also</u> <u>Gagliastre v. Capt. George's Seafood Rest., LP,</u> No. 2:17CV379, 2019 WL 2288441, at *3 (E.D. Va. May 29, 2019) ("counsel has experience in federal court and employment litigation. As a result, their opinion is entitled to weight."); <u>Wyatt v. Sawyer,</u> 105 F. Supp. 2d 1234, 1242 (M.D. Ala. 2000) ("Here, counsel for the plaintiffs argue strongly in favor of approval of the settlement agreement, and their views carry great weight with the court"); <u>Peterson v. Arvida/JMB Partners, L.P.-II,</u> 1994 U.S. Dist. LEXIS 2109, *38 (N.D. Hl. 1994) ("The court should be able to rely upon the judgment of experienced counsel in determining whether or not the settlement is fair. The attorneys should not be forced to support the settlement by staging the very trial on the merits which the settlement was made to avoid"); <u>In Re National Student Marketing Litigation,</u> 68 F.R.D. 151, 155 (D.D.C. 1974) ("The opinion and judgment of experienced counsel, whose labors produced the settlement, should also receive consideration").

Recognizing that a settlement represents an exercise of informed judgment by the negotiating parties, courts have uniformly held that the function of the judge reviewing the settlement is not to resolve issues that the parties intentionally have left unresolved, nor to turn the settlement hearing into a trial or a rehearsal of the trial, nor to make dispositive conclusions on

unsettled legal issues. <u>Flinn v. FMC Corp.</u>, 528 F.2d 1169, 1172-73 (4th Cir. 1975).

> It is not necessary in order to determine whether an agreement of settlement and compromise shall be approved that the Court try the case which is before it for settlement. . . . Such procedure would emasculate the very purpose for which settlements are made. The court is only called upon to consider and weigh the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable.

<u>City of Detroit v. Grinnell Corp</u>, 495 F.2d 448, 462 (2d Cir. 1974) (<u>quoting</u> <u>Young v. Katz,</u> 447

F.2d 431, 433 (5th Cir. 1971)) (<u>abrogated on other grounds</u>, <u>Goldberger v. Integrated Res., Inc.</u>,

209 F.3d 43 (2d Cir. 2000)).

This case involves fact-intensive issues, such as whether and in what amount the amount the Defendants can take a "tip credit" against the minimum wage, whether Defendant restaurant's tip pooling arrangement was valid, whether Defendant restaurants withheld tips for customer walkouts, whether defendant restaurant's credit card processing charges were reasonable, whether Defendant restaurant's training policies were valid, and whether individual legal and factual issues predominated over class issues. The proposed settlement, which represents 1.42x the Opt-In Claimants' minimum wage and overtime damages, provides substantial and meaningful relief to class members immediately. It is the proverbial "bird in the hand" and far preferable to the uncertainty of a litigated judgment far in the future.[6]

Further, while not controlling, the Plaintiffs were mindful that a full recovery of damages in this case would be impacted by the nature of this restaurant, which was particularly struck by

---

[6] <u>Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.</u>, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (in the class action context, the Court noted that " '[i]t has been held proper to take the bird in hand instead of a prospective flock in the bush.' " (citation omitted)).

COVID-19 related closures; the Defendants do not operate a carryout and were forced to close operations which would have predictably resulted in not just lost revenue but continuing obligations, such as rental expenses. Considerations of the ability to pay a judgment, or even a larger settlement, may properly be taken into account. Grinnell Corp., 495 F.2d at 467 ("Appellants have cited no authority for the proposition that the defendants' ability to pay is an improper consideration when approving a settlement offer. Likewise, we are unable to find any such authority. Common sense seems to dictate the necessity, to say nothing of the propriety, of such a consideration. In fact, all available authority defies appellants' analysis."). In this respect, the Court can take judicial notice of the widespread economic damage caused by the COVID-19 closures on small businesses, particularly restaurants whose concept does not lend itself to substituting carryout operations. Williams v. Quinn, 748 F. Supp. 2d 892, 897 (N.D. Ill. 2010) ("In determining whether to approve a settlement, the Federal Rules of Evidence do not apply. Case law supports that any information can be considered, including affidavits and other items not normally admissible at trial, that will aid the court in reaching an informed and reasoned decision.")

a. *Fairness*

"In evaluating the fairness of a proposed settlement, the following factors must be considered: (1) the presence or absence of collusion among the parties; (2) the posture of the case at the time settlement is proposed; (3) the extent of discovery that has been conducted; and (4) the circumstances surrounding the negotiations and the experience of counsel." Edelen, 2013 WL 3816986 at *8.

Given the stage of proceedings in this case, the exchange of documents, the months of negotiation among counsel, and the settlement amount equal to 1.42x minimum wage and overtime damages, and the fact that the parties' reached a settlement through the participation and with the assistance of Judge Connelly, it is clear that the Settlement Agreement is not a result of collusion,

but rather a result of intensive arms-length negotiations. Accordingly, the circumstances surrounding the settlement negotiations in this case support settlement approval.

b. *Adequacy*

"The adequacy prong requires consideration of: (1) the relative strength of the plaintiffs' case on the merits and probability of success at trial; (2) the anticipated duration and expense of additional litigation; (3) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (4) the degree of opposition to the settlement." Singleton, 976 F.Supp.2d at 680.

Here, on balance, the adequacy factor favors final approval of the Settlement Agreement. All class members who have opted in and the Class Representatives will receive 1.42x their alleged loss.

Plaintiffs alleged that Defendants' tip credit failure and the subsequent failure to pay proper minimum and overtime wages was not the result of a bona fide dispute concerning the employees' compensation for all hours worked. But Defendants have raised numerous defenses that establish, at a minimum, a bona fide dispute. In addition, Plaintiffs' ability to recover in excess of the settlement amount is uncertain. This is particularly true given the uncertain nature of how juries and Courts will apply the MWPCL to MWHL claims with respect to treble damages. The Court in Peters v. Early Healthcare Giver, Inc., 439 Md. 646, 97 A.3d 621 (Aug. 13, 2014) held that the MWPCL could be applied to MWHL claims. Critically important to this case, the Peters Court held: (1) that an "incorrect legal belief, such as federal preemption, may form the basis of a legitimate bona fide dispute," and (2) there is no presumption in favor of enhanced (treble) damages in cases where there is an absence of bona fide dispute under the MWPCL. Id. at 628-29. In addition, the Peters court declined to address what factors a jury might apply in determining whether to award treble damages on MWHL claims. Id. at 630 ("We have not attempted in the past to set forth any guiding principles that trial courts should follow when they exercise their discretion whether and in

23

what amount to award a plaintiff employee enhanced damages. Today, we shall be almost as circumspect.").

Defendants also raised the application of <u>Bristol-Myers Squibb Co. v. Superior Court (BMS)</u>, 137 S.Ct. 1773 (2017) as an impediment to this claim. Courts have issued conflicting decisions about exactly how <u>Bristol-Myers</u> applies to out-of-state plaintiffs in Rule 23 claims. <u>See</u>, e.g., <u>Molock v. Whole Foods Mkt. Grp., Inc., 952 F.3d 293 (D.C. Cir. 2020)</u> (holding that a motion to dismiss targeting putative class members is premature prior to class certification); <u>Mussat v. IQVIA, Inc.</u>, 953 F.3d 441 (7th Cir. 2020) (denying a motion to strike the class definition and holding that personal jurisdiction is not necessary vis-a-vis unnamed class members). How <u>Bristol-Myers</u> applies to out-of-state plaintiffs would likely have been a contested legal issue had the parties not reached a settlement.

The Class Representatives believe that they and the Rule 23 Settlement Class have a strong case against the Defendants. But despite this confidence, there is always the recognition that there is no certainty in litigation and that success in this case depended almost entirely on the Court's interpretation of the controlling statutory language and the jury's determination of fact (and specifically, in this case, the award of enhanced statutory damages under the Maryland Wage Payment and Collection Law). "It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." <u>West Virginia v. Chas. Pfizer & Co.</u>, 314 F. Supp. 710 (S.D.N.Y. 1970), <u>affd</u>, 440 F.2d 1079 (2d Cir. 1971) ("<u>Pfizer</u>"). In <u>Pfizer,</u> a notable consumer class action, the Court offered the following example:

> In <u>Upson v. Otis</u>, 155 F.2d 606, 612 (2d Cir. 1946), approval of a settlement was reversed, the Court saying (at 612): "on the facts presented to the district judge, the liability of the individual defendants was indubitable and the amount of recovery beyond doubt greater than that offered in the settlement. Accordingly, it was an abuse of discretion to approve the settlement." The action was then tried and plaintiffs obtained a judgment, twice considered by the Court of Appeals (168 F.2d 649, 169 F.2d 148 (1948)). We are told, however, that

"the ultimate recovery . . . turned out to be substantially less than the amount of the rejected compromise."

Id. at 743-44.

Events time and again have demonstrated the enormous risks of litigation. For example, a class action against the manufacturer of the drug Bendectin was originally settled. The Court of Appeals for the Sixth Circuit reversed approval of that settlement. In re Bendectin Productions Liability Litigation, 749 F.2d 300 (6th Cir. 1984).  Thereupon, as reported in *The Wall Street Journal* (March 13, 1985), the plaintiffs tried the case and, by jury verdict, lost the millions of dollars for which they had originally bargained.

The Class Representatives believe that they and the class have a strong case against Defendants. But as evident from the above discussion, however, it is by no means certain that the Class Representative and the class will obtain a result better than that achieved through the Settlement Agreement. Such a result would be achieved only after years of litigation, and potential appeals. "On balance, the risks, delay, and costs associated with further litigation weigh in favor of granting final approval of the Settlement Agreement." Edelen, 2013 WL 3816986 at *8.

### c.  Service (Incentive) Fees

"[C]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks incurred during the course of the class action litigation."  In re Lorazepam & Clorazepate Antitrust Litig., 205 F.R.D. 369, 400 (D.D.C. 2002).  Here, each Class Representative (Charles Chang, Won Song, and Dongxiong Zhu) will receive a Service Payment of $8,500.00, while two FLSA Opt-in Plaintiffs who participated in the September 24, 2020 mediation, will each receive a Service Payment of $4,000.00.

To determine whether a service or incentive payment is warranted, it is important to consider the actions that the Class Representatives and settlement committee took to protect the interests of

the class, the degree the class benefited, and the amount of time and effort put forth by those who would receive service (incentive) fees.  See Alloways, 2019 WL 1902813 at *14.

In this case, the Class Representatives and those individuals who participated on the settlement committee benefited and protected the interests of what, at the time, was only a *proposed* class.  Those selected to receive service awards not only committed considerable time and effort into representative the class during mediation but refused to accept any offers that they did not believe to be fundamentally fair.

In addition to their commitment to protecting the interests of the class during mediation, the Class Representatives and the individuals who participated in the settlement committee provided critical information early in the litigation and helped to support the advancement of this litigation by providing insight into the Defendants' employment practices.

For all the significant time and energy the Class Representatives and settlement committee individuals have put into advancing this litigation, the service fee they are receiving is extremely modest. These awards track the size of payments to participating plaintiffs in other class action settlements in this Circuit.  See e.g., Trombley v. National City Bank, 826 F. Supp. 2d 179, 207 (D.D.C. 2011) ($5,000 award); Alloways, 2019 WL 1902813 at *14 (where the Court approved a $6,000 incentive payment and noted that a comparison of the incentive award to the average net award showed that the incentive award was "relatively modest."); see also Edelen, 2013 WL 3816986 at *16 (holding that an incentive award of $1,000 for the lead plaintiff, in comparison to his settlement award of $688.00, is relatively modest and reasonable);  Wells v. Allstate Ins. Co., 557 F. Supp. 2d 1, 8-9 (D.D.C. 2008) ($10,000 award); Cohen v. Warner Chilcott Pub. Ltd. Co., 552 F. Supp. 2d 105, 123 (D.D.C. 2007 ($7,500 award).

Therefore, in light of their roles in helping to achieve a favorable resolution for the class, their continuous and lengthy support (this case is approaching 2 years in length), in advancing this

litigation, and the relative modesty of the award, these service fees are warranted.

    4.  <u>Final Approval of Class Counsel / Litigation of Fees & Costs</u>

       The parties submit that the evidence in this case demonstrates that the work performed by Plaintiffs' counsel has exhibited a high level of dedication and conscientious effort, and they should therefore be approved as class counsel.

       Rule 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). " 'In approving either a Rule 23 settlement or a private settlement of FLSA claims, the reasonableness of any award of attorneys' fees must be assessed.' " <u>Chado v. Nat'l Auto Inspections, LLC</u>, 2020 WL 4368106 at *5 (D. Md. Jul. 30, 2020) (quoting <u>Edelen</u>, 2013 WL 3186986 at *11).

       As mentioned above[7], and as supported by the Unopposed Motion for Approval of Attorneys' Fees, which is being contemporaneously filed by Plaintiffs' counsel, counsel has applied for the reimbursement of $200,000.00, which in addition to existing litigation fees and costs, is inclusive of all fees and costs associated with time moving forward along with any expert fees. These fees/costs are reasonable using either a percentage of the fund approach, as having been advocated by Plaintiffs' counsel, or a lodestar approach as advocated by Defendants' counsel. <u>Supra</u>, pages 13-14. Indeed, the parties compromised their negotiation positions regarding fees/costs and counsel has discounted initial demands by $100,000.00 and shared key invoice data with defense counsel for their inspection and review.

       Therefore, the attorneys' fees were not negotiated until well after the terms of the Settlement

---

[7]    <u>Supra</u>, pages 13-14.

Agreement had been determined and they not detract from the relief negotiated to the Class Members, and is separate from the relief provided to the Class Members under the Settlement Agreement and Release.[8]

## IV.   CONCLUSION

For all the foregoing reasons, the Parties respectfully request that the Court grant this Motion, and finally approve this proposed FLSA settlement and certify this Rule 23 settlement class. For purposes of the FLSA, the proposed Settlement Agreement reflects a reasonable compromise over issues that are in dispute. For purposes of the MWHL class claims brought pursuant to Rule 23, the proposed Settlement Agreement is fair, reasonable and adequate, and there are no reasons to doubt its fairness, and it appears to fall within the range of possible approval.

---

[8]    Plaintiffs' counsel has taken an approach of negotiating fees/costs separately and secondarily.  See Martin v. Huddle House, Inc., 2011 WL 13254528, *7 (N.D. Ga. May 18, 2011) (In an FLSA case, finding Plaintiff's counsel violated Rule 1.7 (conflict of interest), referring the alleged violation to the Georgia Bar, and otherwise observing "Ms. Dodson's actions in this matter violated Rule 1.7.  While negotiating a simultaneous settlement that provided for damages awards and attorney's fees, her economic interest in those fees had a material and adverse effect on her representation of plaintiffs because that interest motivated her to seek a higher fee award than she was entitled to receive under her fee agreement. Moreover, this higher fee award resulted in a lower damages award for her clients."); Bonetti v. Embarq Mgmt. Co., 715 F.Supp.2d 1222, 1228 (M.D. Fla. 2009) ("[T]he Court finds that the best way to insure that no conflict has tainted the settlement is for the parties to reach agreement as to the plaintiff's recovery before the fees of the plaintiff's counsel are considered."); Petrov v. Cognoscenti Health Inst., LLC, 2010 WL 557062, at *3 (M.D. Fla. Feb. 12, 2010) ("[A] potential conflict can arise between counsel and their client regarding how much of the plaintiff's total recovery should be allocated to attorneys' fees and costs."); Cisek v. Nat'l Surface Cleaning, Inc., 954 F.Supp. 110 (S.D.N.Y. 1997) ("Plaintiffs' counsel therefore had an inherent conflict of interest in that they reasonably should have perceived that every dollar the defendants agreed to pay them was a dollar that defendants would not pay to the plaintiffs.")

Respectfully submitted,

/s/ *Howard B. Hoffman*
Howard B. Hoffman
Federal Bar No. 25965
Jordan Song En Liew
Federal Bar No. 20509
Hoffman Employment Law, LLC
600 Jefferson Plaza, Ste. 204
Rockville, Maryland 20852
(301) 251-3752
hhoffman@hoholaw.com
jliew@hoholaw.com

/s/ *(signed with permission)*
James Edward Rubin
Federal Bar No. 15605
The Rubin Employment Law Firm, P.C.
600 Jefferson Plaza, Ste. 204
Rockville, Maryland 20852
(301) 760-7014
jrubin@rubinemploymentlaw.com

*Counsel for Plaintiffs*

/s/ *(signed with permission)*
James R. Hammerschmidt
Federal Bar No. 22223
Scott A. Mirsky
Federal Bar No. 25081
Paley, Rothman, Goldstein, Rosenberg,
Eig & Cooper, Chartered
4800 Hampden Lane, 6th Floor
Bethesda, Maryland 20814
(301) 951-9338
(301) 968-1648
jhammerschmidt@paleyrothman.com
smirsky@paleyrothman.com

*Counsel for Defendants Iron Age*
*Rockville, LLC, Iron Age Baltimore,*
*LLC, Iron Age Annandale, LLC, Iron Age*
*Centreville, LLC, Myung Ae Sim, and*
*Hannah Sim*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th of November, 2021, a copy of the Joint Motion for Order For Final Certification of the Rule 23 Class Settlement Class and Final Approval of the Settlement Agreement was filed via the Electronic Case Filing System (ECF) maintained by the U.S. District Court for the District of Maryland, and is available for viewing and downloading from the ECF system.

 /s/ *Jordan S. Liew*
Jordan S. Liew